UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

In re:

Jacalyn S. Nosek
         Debtor

Chapter 13
Case No.: 02-46025-JBR

Jacalyn S. Nosek
         Plaintiff
v.
Ameriquest Mortgage Company
         Defendant

Denise M. Pappalardo and
Carolyn A. Bankowski,
         Trustee Defendants

Adv. Pro. No. 07-04109-JBR
(Related Adv. Pro. No. 04-04517-JBR)

**Plaintiff's Opposition to Cross Motion
of Ameriquest Mortgage Company to Dismiss Complaint**

INTRODUCTION

It is well-settled law that the principal is bound by the acts of their agent. Under

Massachusetts law it is the duty of the agent to disclose the existence of its principal. When a

creditor sues the agent of a non-disclosed principal, it does not constitute an election to look

solely to the agent for payment.

At no time during the discovery stages and trial of Adv. Pro. No. 04-04517 did

Ameriquest Mortgage Company ("Ameriquest"), as the servicing agent, disclose the identity

of the principal for whom it was collecting mortgage payments and maintaining mortgage

-1-

accounting records. That entity was just identified on September 27, 2007, as Norwest Bank, Minnesota, N.A., as Trustee for Amresco Residential Securities Corp. Mortgage Loan Trust, Series 1998-2. The proposed *Amended Complaint* adds the previously undisclosed principal.

<u>STANDARD OF REVIEW RE: MOTIONS TO DISMISS</u>

A district court may grant a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory". *Pomerleau v. West Springfield Public Schools,* 362 F.3d 143, 145 (1st Cir. 2004) *(citing) Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 52 (1st Cir. 1990).

All factual inferences must be drawn in the plaintiff's favor and against the defendants. *Anyanwu v Columbia Broadcasting System, Inc.*, 887 F. Supp. 690, 692 (S.D.N.Y. 1995), *(citing) Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989); *Dwyer v. Regan,* 777 F.2d 825, 828-29 (2d Cir. 1985).

Paragraphs 24 and 25 of Plaintiff's Amended Complaint are drawn from the *Declaration of Eileen Driscoll Rubens in Support of Opposition to Emergency Motion for Approval of Attachment on Trustee Process*, recently filed with this Court by Defendant Ameriquest Mortgage Company.

For the purposes of ruling on a Rule 12(b)(6) motion to dismiss, not only must all factual allegations in the Complaint be presumed to be true, but in this instance the Defendant Ameriquest Mortgage Company has confirmed the veracity of paragraphs 24 and 25.

<u>BURDEN OF PROOF</u>

Rule 12(b)(6) also imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355* U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed. 2d 80 (1957). *Accord Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 2232-33, 81 L. Ed. 2d 59 (1984) (quoted in *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 250-51, 109 S. Ct. 2893, 2906, 106 L. Ed. 2d 195 (1989)), *Anyanwu* at 692.

" ... 'the Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim.'" *Brever v. Rockwell International Corporation,* 40 F.3d 1119, 1125 (10th Cir.1994), *(citing) Morgan v. City of Rawlins,* 792 F.2d 975 at 978 (quoting *Auster Oil & Gas Inc. v. Stream,* 764 F.2d 381 (5th Cir. 1985)).

<u>GOVERNING PRINCIPALS OF THE RULES OF AGENCY</u>

In *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982), the Supreme Court of the United States stated that under general rules of agency law, principals are liable when their agents act with apparent authority and commit torts.

"It is . . . for the ultimate interest of persons employing agents, as well as for the benefit of the public, that persons dealing with agents should be able to rely upon apparently true statements by agents who are purporting to act and are apparently acting in the interests of the principal." *Restatement § 262, Comment a*, p. 572, *ASME v. Hydrolevel* at 567.

...

-3-

"The apparent authority theory has long been the settled rule in the federal system.  See *Ricketts v. Pennsylvania R. Co.,* 153 F.2d, at 759. In *Friedlander v. Texas & Pacific R. Co.,* 130 U.S. 416 (1889), the Court held that an employer was not liable for the fraud of his agent, when the employer could derive no benefit from the agent's fraud.  But *Gleason v. Seaboard Air Line R. Co.,* 278 U.S. 349 (1929), discarded that rule.  In *Gleason*, a railroad's employee sought to enrich himself by defrauding a customer of the railroad through a forged bill of lading.  The Court of Appeals had absolved the railroad from liability because the employee perpetrated the fraud solely for his own benefit.  But this Court reversed,  overruling *Friedlander*.  278 U.S., at 357. Noting that "there was . . . no want of authority in the agent," *id., at 355*, the Court held the railroad  liable despite the agent's desire to benefit only himself.  It explained that "few doctrines of the law are more firmly established or more in harmony with accepted notions of social policy than that of the liability of the principal without fault of his own." *Id., at 356*.

"In a wide variety of areas, the federal courts, like this Court in *Gleason*, have imposed liability upon principals for the misdeeds of agents acting with apparent authority. See, *e. g., Dark v. United States,* 641 F.2d 805 (CA9 1981) (federal tax liability); *National Acceptance Co*. v. *Coal Producers Assn.,* 604 F.2d 540 (CA7 1979) (common-law fraud); *Holloway v. Howerdd,* 536 F.2d 690 (CA6 1976) (federal securities fraud); *United States v. Sanchez,* 521 F.2d 244 (CA5 1975) (bail bond fraud), cert. denied, 429 U.S. 817 (1976); *Kerbs v. Fall River Industries, Inc.,* 502 F.2d 731 (CA10 1974) (federal securities fraud); *Gilmore v. Constitution Life Ins. Co., 502 F.2d 1344 (CA10 1974)* (common-law fraud). *ASME v. Hydrolevel* at 567-568.

...

In addition,

"(a) majority of courts, [however], have held corporations liable for punitive damages imposed because of the acts of their agents, in the absence of ap-

-4-

proval or ratification. See W. Prosser, Law of Torts 12 (4th ed. 1971).  *E. g.,
Kelite Products, Inc.* v. *Binzel,* 224 F.2d 131, 144 (CA5 1955) ("[The] jury
may in its discretion assess punitive damages against a corporate defendant
for oppressive acts of its agent done in the course of his employment, regard-
less of actual authority or ratification"); *Mayo Hotel Co.* v. *Danciger,* 143
Okla. 196, 200, 288 P. 309, 313 (1930) (holding corporate principal liable for
punitive damages, noting that "the legal malice of the servant is the legal
malice of the corporation").  In fact, the Court may have departed from the
trend of late 19th-century decisions when it issued *Lake Shore & M.S.R. Co.*
v. *Prentice,* 147 U.S. 101 (1893), requiring the principal's participation,
approval, or ratification. See *Singer Manufacturing Co.* v. *Holdfodt,* 86 Ill.
455, 459 (1877) ("if the wrongful act of the agent is perpetrated while ostensi-
bly discharging duties within the scope of the corporate purposes, the corpora-
tion may be liable to vindictive damages"); see also *Pullman Palace Car Co.*
v. *Lawrence,* 74 Miss. 782, 803-805, 22 So. 53, 57-59 (1897); *Goddard v.
Grand Trunk R. Co.,* 57 Me. 202, 223-224 (1869); *(cited in) American Society
of Mechanical Engineers, Inc. v. Hydrolevel Corp.* at 576.

## ARGUMENT

### IT IS THE DUTY OF THE AGENT, TO DISCLOSE NOT ONLY THAT HE IS ACTING IN A REPRESENTATIVE CAPACITY, BUT ALSO THE IDENTITY OF HIS PRINCIPAL.

"If the other party [to a transaction] has notice that the agent is or may be acting for a
new principal but has no notice of the principal's identity, the principal for whom the agent is
acting is a partially disclosed principal." *Restatement (Second) of Agency § 4(2)* (1958).

"It is the duty of the agent, if he would avoid [personal] liability on a contract entered
into by him on behalf of his principal, to disclose not only that he is acting in a representative
capacity, but also the identity of his principal."  *Atlantic Salmon A/S & Another v. Michael*

-5-

*P. Curran*,  32 Mass. App. Ct. 488, 491-492; 591 N.E.2d 206  (1992) *(citing) Merriam* v.

*Wolcott*, 3 Allen 258, 261 (1861). See, *Meyers-Leiber Sign Co. v. Weirich*, 2 Ariz. App. 534,

536 (1966); *J & J Builders Supply v. Caffin*, 248 Cal. App. 2d 292, 295 (1967); *W. W.*

*Leasing Unlimited v. Commercial Standard Title Ins. Co.*, 149 Cal. App. 3d 792, 795 (1983);

*New England Whalers Hockey Club v. Nair*, 1 Conn. App. 680, 683 (1984); *Chambliss v.*

*Hall*, 113 Ga. App. 96, 99 (1966); *Lachmann v. Houston Chronical Publishing Co.*, 375

S.W.2d 783, 785 (Tex. Ct. App. 1964); *Anderson v. Smith*, 398 S.W.2d 635, 637 (Tex. Ct.

App. 1965); *A to Z Rental Center v. Burris*, 714 S.W. 2d 433, 435 (Tex. Ct. App. 1986).

In Adv. Pro. No. 04-04517-JBR the plaintiff Nosek had notice only that an investor

existed who was identified by a number, but whose actual identity was never disclosed by

Defendant Ameriquest Mortgage Company during the pendency of that adversary proceed-

ing.

At no time did Ameriquest raise as an Affirmative Defense as required by Bankruptcy

Rule 7012 that Plaintiff had failed to join a necessary party under Rule 19. See Exhibit 1,

*Ameriquest's Answer to Complaint with Affirmative Defenses*, attached.

In fact, the Plaintiff did make inquiry at the Deposition taken of Judi Johnson into the

significance of the investor number (Deposition pp. 149 - 150), and the deposition concluded

with another inquiry by Plaintiff's counsel into the investor number (Deposition pp. 193 -

199, specifically pp. 197 -198). See Exhibit 2, *Excerpts of Deposition Transcript*.

Ameriquest failed to supplement the testimony of Ms. Johnson, and arguably

concealed the identity of its principal.

The identity of the investor and holder of the mortgage given by Ms. Nosek to

Ameriquest Mortgage Company is not a matter of public record. No assignment of the mortgage in question appears in the public records maintained by the Worcester South Registry of Deeds.

Correspondence sent to Ms. Nosek by Ameriquest Mortgage Company also did not disclose the identity of the mortgage holder which had contracted with Ameriquest Mortgage Company to service the mortgage.

Ameriquest Mortgage Company did not disclose who the investor number referred to until the *Declaration of Eileen Driscoll Rubens in Support of Opposition to Emergency Motion for Approval of Attachment* on *Trustee Process* was filed with this Court on September 27, 2007.

<u>IT WAS THE OBLIGATION OF AMERIQUEST MORTGAGE COMPANY TO REVEAL THE IDENTITY OF ITS PRINCIPAL</u>

"In any event, it was not the plaintiffs' duty to seek out the identity of the defendant's principal; it was the defendant's obligation fully to reveal it." *Atlantic Salmon A/S & Another v. Michael P. Curran*, 32 Mass. App. Ct. 488, 492-493; 591 N.E.2d 206 (1992) (citing *Meyers-Leiber Sign Co. v. Weirich, supra; W. W. Leasing Unlimited v. Commercial Standard Title Ins. Co., supra* at 795-796; *New England Whalers Hockey Club v. Nair, supra; Stevens v. Graf,* 358 Mich. 122, 126  (1959); *Howell v. Smith,* 261 N.C. 256, 259 (1964); *Lachmann v. Houston Chronical Publishing Co., supra*; *Anderson v. Smith, supra*; *A to Z Rental Center v. Burris, supra.*

THE BRINGING OF AN ACTION AGAINST THE AGENT IN IGNORANCE OF THE EXISTENCE OF THE
PRINCIPAL IS NOT AN ELECTION BECAUSE THERE HAS NEVER BEEN A CHOICE

In *Gavin v. Durden Coleman Lumber Co.,* 229 Mass. 576, 578-579, 118 N.E. 897

(1918), the Massachusetts Supreme Judicial Court said: "(i)t is the settled law that a person

dealing with an agent of an undisclosed principal may, upon discovery of the principal, resort

to him or to the agent with whom he deals at his election. *Raymond v. Crown & Eagle Mills,*

2 Metc. 319. And it is equally well settled that an election once made with full knowledge of

the liability of the newly discovered principal, determines the right and obligations of the

parties. ... The bringing of an action against the agent with knowledge of the liability of the

principal, is not conclusive of an election unless followed to a judgment.  *Raymond v. Crown*

*& Eagle Mills,* supra; *Kingsley v. Davis, 104 Mass. 178*; *Estes v. Aaron, 227 Mass. 96, 116*

*N. E. 392*; Priestly v. Fernie, 3 H. & C. 977. **The bringing of an action against the agent,**

**followed by his default and the entry of judgment by the creditor in ignorance of the**

**existence of the principal, is not an election because there has never been an opportu-**

**nity to make a choice**. *Greenburg v. Palmieri, 71 N. J. Law, 83, 58 Atl. 297*; *Lindquist v.*

*Dickson, 98 Minn. 369, 107 N. W. 958, 6 L. R. A. (N. S.) 729, 8 Ann. Cas. 1024*." (emphasis

added). *Gavin* at 578-579.

*Gavin* is on all fours with Adv. Pro. No. 04-04517.  Ameriquest Mortgage Company

never disclosed the identity of its principal. It never gave the Plaintiff Nosek the opportunity

to inquire into th nature of the relationship, or pursue her remedies against Norwest Bank,

Minnesota, N.A., the Trustee for Amresco Residential Securities Corp. Mortgage Loan Trust,

-8-

Series 1998-2.

<u>No Judgment Has Yet Entered in Adv. Pro. No. 04-04517-JBR.</u>

No *Judgment* has yet been entered in Adv. Pro. 04-04517. The Bankruptcy Court

issued an *Order* after remand awarding damages, but no *Judgment* has been entered by the

Court Clerk on the docket.

An award is made by a fact finder as to damages only, either by a jury or by a judge

in a jury waived case.

In its March 6, 2007, *Decision on Remand* in Adv. Pro. 04-04517, this Court stated in

relevant part that: "[c]onsistent with the District Court's decision and the relevant case law,

the Court finds that Nosek is entitled to actual damages for her emotional distress as well as

punitive damages under Section 105(a) for Ameriquest's violation of Section 1322(b). The

Court finds that its previous award of $250,000.00 for Nosek's emotional distress is appro-

priate and hereby awards that amount under Section 105(a). ... "As for punitive damages, the

Court finds that Ameriquest's accounting practices are wholly unacceptable for a national

mortgage lender and hereby awards $500,000.00 under Section 105(a)."

The award of damages is not the same as an entry of judgment. In the ordinary course

the next step should be the award of attorney's fees on a post-trial motion and computation of

pre-trial interest by the Clerk of the Court, or designated deputy, who issues the *Judgment*.

When all appeal remedies have been exhausted, an *Execution* may issue.

In *Appellee's Brief* filed in CA 06-40170-WGY, Nosek argued that entry of an *Order*

in the context of a dispositive motion was final for the purposes for seeking appellate review,

-9-

but that an Adversary Proceeding concludes with the issuance by the Court Clerk of a *Judgment* and a dated docket entry.

The U.S.District Court ruled otherwise, stating that the *Order* and *Findings* entered by this Court were sufficiently final to confer appellate jurisdiction in the U.S. District Court, even though the issue of plaintiff's attorney's fees was still then before this Court.

Plaintiff's counsel respectfully continues to assert that all adversary proceedings should conclude with entry of a judgment. Bankruptcy Rule 7054 states that Fed. R. Civ. P. Rules 54(a)-(c)  applies in adversary proceedings.

The issue of the importance of a Judgment being issued and docketed has been addressed by the 1st Circuit decision in *Willhauck v. Halpin*, 919 F.2d 788 (1st Cir. 1990). *Willhauck* cited *United States v. Indrelunas*, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973), where a unanimous Supreme Court held that a district court failed to meet the Rule 58 "separate document" mandate where its judgment was not recorded on a separate document. The Court stated that Rule 58 "must be mechanically applied to avoid new uncertainties as to the date on which a judgment is entered." *Id*. at 222. Lacking a proper final judgment, the Court determined that the time for appeal in the case had not begun to run. *Id*.

Bankruptcy Rule 9021 - Entry of Judgment says:

Rule 9021. Entry of Judgment
Except as otherwise provided herein, Rule 58 F.R.Civ.P. applies in cases under the Code. Every judgment entered in an adversary proceeding or contested matter shall be set forth on a separate document. A judgment is effective when entered as provided in Rule 5003. The reference in Rule 58

F.R.Civ.P. to Rule 79(a) F.R.Civ.P. shall be read as a reference to Rule 5003 of these rules.

Rule 58. Entry of Judgment

.. upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, ***the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court*** (emphasis added)*.*

Bankruptcy Rule 5003. Records Kept By the Clerk says:

(a) Bankruptcy dockets.

The clerk shall keep a docket in each case under the Code and shall enter thereon each judgment**,** order, and activity in that case as prescribed by the Director of the Administrative Office of the United States Courts. The entry of a judgment or order in a docket shall show the date the entry is made.

The language in the first sentence of Bankruptcy Rule 5003 refers to judgments and orders as being two separate types of documents.

Similarly, Official Form 32 from the Federal Rules of Court of Massachusetts "Judgment on Decision by the Court" states that the **clerk is to prepare, sign and enter the judgment** (emphasis added).

There is still no Judgment signed by the Clerk, nor an entry of Judgment appearing on the Docket as of this date.

ADV. PRO. 07-04109 IS NOT AN ATTEMPT TO AMEND A JUDGMENT.

Adv. Pro. 07-04109  is not an attempt to amend a judgment. As Ameriquest Mortgage Company correctly notes, to amend a judgment to include a claim against a party who did not

-11-

participate in the underlying litigation is fundamentally unfair and violates the third party's due process rights.

The proposed *Amended Complaint* asserts new and independent causes of action against Ameriquest Mortgage Company's principal, Norwest Bank, Minnesota, N.A., as Trustee for Amresco Residential Securities Corp. Mortgage Loan Trust, Series 1998-2, for damages caused by the acts of its agent, Ameriquest Mortgage Company.

Ameriquest Mortgage Company breached its duty to disclose the identity of its principal, and Ameriquest cannot now argue that the plaintiff is precluded from asserting her rights against the recently disclosed principal.

Nosek does not seek to re-litigate any issue that has already been raised or decided by this Court. This Court's *Findings of Fact* have already been reviewed by the U.S. District Court, and upheld as not being clearly erroneous.

The *Amended Complaint* filed in Adv. Pro. 07-04109 seeks to recover from the principal, Norwest Bank, Minnesota, N.A., as Trustee for Amresco Residential Securities Corp. Mortgage Loan Trust, Series 1998-2, the amounts awarded by this Court to Ms. Nosek for the culpable acts of its servicing agent at the time, Ameriquest Mortgage Company, plus applicable fees, costs and interest.

The Plaintiff anticipates that the scope of discovery to be conducted in Adv. Pro. 07-04109 will be limited to the terms of the servicing agreement, correspondence and communication between the agent and its principal, and the duties, responsibilities and liabilities of the respective parties.

The newly formed entity, Citi Residential Lending, Inc., is the current servicing agent, and is named as a Trustee Defendant only.

## CONCLUSION

In her proposed *Amended Complaint*, the Plaintiff has put forward a viable theory of recovery, supported by decisions of the United States Supreme Court and the Supreme Judicial Court of Massachusetts.

Ameriquest Mortgage Company has not met its burden of demonstrating "beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief", or that "the plaintiff cannot recover on any viable theory".   Plaintiff requests that the motion to dismiss be DENIED.

Jacalyn Nosek
By her attorney,

/s/ Philip M.  Stone
Philip M. Stone, BBO # 544139
44 Front Street
Worcester, MA  01608
Tel. (508) 755-7354
Fax.  (508) 752.3730
E-mail: pstonelaw@rcn.com

Dated:        November 26, 2007

-13-

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

In re

Jacalyn S. Nosek
     Debtor

_____ }

| | |
|---|---|
| Jacalyn S. Nosek } | Chapter 13 |
|      Plaintiff } | Case No. 02-46025-JBR |
| } | |
| v. } | Adversary Proceeding |
| } | Case No. 04-04517-JBR |
| Ameriquest Mortgage Company } | |
|      Defendant } | |

_____ }

ANSWER OF DEFENDANT, AMERIQUEST MORTGAGE COMPANY,
TO COMPLAINT FOR ADVERSARY PROCEEDING OF
PLAINTIFF, JACALYN S. NOSEK

To The Honorable Joel B. Rosenthal:

INTRODUCTION

DEFENDANT, AMERIQUEST MORTGAGE COMPANY (HEREINAFTER
"DEFENDANT"), HEREBY ANSWER THE COMPLAINT OF JACALYN S. NOSEK,
(HEREINAFTER "PLAINTIFF") AS FOLLOWS:

PARTIES

1. The Defendant admits the allegations contained in paragraph 1 based upon information and belief.

2. The Defendant admits the allegations contained in paragraph 2.

ALLEGATIONS COMMON TO ALL COUNTS

3. The Defendant admits the allegations contained in paragraph 3.

4. The Defendant is without sufficient knowledge or information to admit or deny the allegations in

1

paragraph number 4 of the Plaintiff's complaint and call upon Plaintiff to prove same.

5.    The Defendant admits the allegations contained in paragraph 5.

6.    The Defendant denies the allegations contained in paragraph 6.

7.    The Defendant denies the allegations contained in paragraph 7.

8.    The Defendant admits the allegations contained in paragraph 8.

9.    The Defendant admits the allegations contained in paragraph 9.

10.    The Defendant admits the allegations contained in paragraph 10.

11.    The Defendant denies the allegations contained in paragraph 11 as stated.

12.    The Defendant denies the allegations contained in paragraph 12.

13.    The Defendant denies the allegations contained in paragraph 13.

14.    The Defendant is without sufficient information to admit or deny the allegations contained in paragraph 14 and call upon Plaintiff to prove same.

15.    The Defendant is without sufficient information to admit or deny the allegations contained in paragraph 15 and call upon Plaintiff to prove same.

16.    The Defendant denies the allegations contained in paragraph 16.

17.    The Defendant denies the allegations contained in paragraph 17.

18.    The Defendant admits the allegations contained in paragraph 18.

19.   The Defendant is without sufficient information to admit or deny the allegations contained in paragraph 19 and call upon Plaintiff to prove same.

20.   The Defendant denies the allegations contained in paragraph 20.

21.   The Defendant is without sufficient information to admit or deny the allegations contained in paragraph 21 and call upon Plaintiff to prove same.

22.   The Defendant admits the allegations contained in paragraph 22.

23.   The Defendant is without sufficient information to admit or deny the allegations contained in paragraph 23 and call upon Plaintiff to prove same.

24.   The Defendant denies the allegations contained in paragraph 24.

25.   The Defendant denies the allegations contained in paragraph 25.

26.   The Defendant denies the allegations contained in paragraph 26 and is without sufficient information to admit or deny the allegations contained in "Exhibit 3" and call upon Plaintiff to prove same.

27.   The Defendant denies the allegations contained in paragraph 27.

28.   The Defendant denies the allegations contained in paragraph 28.

29.   The Defendant denies the allegations contained in paragraph 29.

30.   The Defendant denies the allegations contained in paragraph 30.

31.   The Defendant admits the allegations contained in paragraph 31.

32.   The Defendant denies the allegations contained in paragraph 32.

33. The Defendant admits the allegations contained in paragraph 33.

34. The Defendant admits the allegations contained in paragraph 34.

35. The Defendant denies the allegations contained in paragraph 35.

36. The Defendant denies the allegations contained in paragraph 36.

37. The Defendant admits the allegations contained in paragraph 37.

38. The Defendant admits the allegations contained in paragraph 38.

39. The Defendant admits the allegations contained in paragraph 39.

40. The Defendant denies the allegations contained in paragraph 40.

41. The Defendant admits the allegations contained in paragraph 41.

42. The Defendant admits the allegations contained in paragraph 42.

43. The Defendant denies the allegations contained in paragraph 43.

44. The Defendant admits the allegations contained in paragraph 44.

COUNT I
TRUTH IN LENDING ACT

45. The Defendant repeats and reallege their answers to paragraphs 1 through 44 above and incorporate them herein by reference.

46. The Defendant admits the allegations contained in paragraph 46.

47.  The allegations contained in paragraph 47 are
     allegations of law to which no response is required
     and none is given.  To the extent that the allegations
     contained in paragraph 47 are intended to allege any
     liability or wrongdoing against the Defendants, they
     are denied.

48.  The Defendant denies that the interest rates charged
     by Ameriquest do not comport with the Terms of the
     Note.  The Defendant admits the remainder of paragraph
     48.

49.  The Defendant denies the allegations contained in
     paragraph 49.

50.  The Defendant denies the allegations contained in
     paragraph 50.

51.  The Defendant denies the allegations contained in
     paragraph 51.

52.  The allegations contained in paragraph 52 are
     allegations of law to which no response is required
     and none is given.  To the extent that the allegations
     contained in paragraph 52 are intended to allege any
     liability or wrongdoing against the Defendants, they
     are denied.

     WHEREFORE the Defendant requests judgment in their
     favor plus costs and such further relief as the Court
     deems just and proper.

                        COUNT II
           QUALIFIED WRITTEN REQUEST UNDER RESPA

53.  The Defendant repeats and reallege their answers to
     paragraphs 1 through 52 above and incorporate them
     herein by reference.

54.  The Defendant denies the allegations contained in
     paragraph 54.

55.  The Defendant denies the allegations contained in
     paragraph 55.

WHEREFORE the Defendant requests judgment in their favor plus costs and such further relief as the Court deems just and proper.

COUNT III
MGL c. 93A, §§2 and 9

56. The Defendant repeats and reallege their answers to paragraphs 1 through 55 above and incorporate them herein by reference.

57. The Defendant admits the allegations contained in paragraph 57.

58. The Defendant denies the allegations contained in paragraph 58.

59. The Defendant denies the allegations contained in paragraph 59.

60. The Defendant is without sufficient information to admit or deny the allegations contained in paragraph 60 of the Plaintiff's complaint and call upon Plaintiff to prove same.

61. The Defendant denies the allegations contained in paragraph 61.

62. The Defendant denies the allegations contained in paragraph 62.

63. The Defendant denies the allegations contained in paragraph 63.

WHEREFORE the Defendant requests judgment in their favor plus costs and such further relief as the Court deems just and proper.

COUNT IV
UNJUST ENRICHMENT

64. The Defendant repeats and reallege their answers to paragraphs 1 through 63 above and incorporate them herein by reference.

65. The Defendant denies the allegations contained in paragraph 65.

WHEREFORE the Defendant requests judgment in their favor plus costs and such further relief as the Court deems just and proper.

## COUNT V
### BREACH OF IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING

66.  The Defendant repeats and reallege their answers to paragraphs 1 through 65 above and incorporate them herein by reference.

67.  The Defendant denies the allegations contained in paragraph 67.

WHEREFORE the Defendant requests judgment in their favor plus costs and such further relief as the Court deems just and proper.

## COUNT VI
### INFLICTION OF EMOTIONAL DISTRESS

68.  The Defendant repeats and reallege their answers to paragraphs 1 through 44 above and incorporate them herein by reference.

69.  The Defendant denies the allegations contained in paragraph 69.

70.  The Defendant denies the allegations contained in paragraph 70.

71.  The Defendant denies the allegations contained in paragraph 71.

72.  The Defendant denies the allegations contained in paragraph 72.

73.  The Defendant is without sufficient information to admit or deny the allegations contained in paragraph 73 and call upon Plaintiff to prove same.

WHEREFORE the Defendant requests judgment in their favor plus costs and such further relief as the Court deems just and proper.

COUNT VII
LOST INCOME

74.  The Defendant repeats and reallege their answers to
     paragraphs 1 through 44 above and incorporate them
     herein by reference.

75.  The Defendant denies the allegations contained in
     paragraph 75.

76.  The Defendant is without sufficient information to
     admit or deny the allegations contained in paragraph
     76 and call upon Plaintiff to prove same.

     WHEREFORE the Defendant requests judgment in their
     favor plus costs and such further relief as the Court
     deems just and proper.

WHEREFORE, Defendant respectfully request this Court;

   1.   Find in favor of Defendant on all counts set forth
        in Plaintiff's complaint;

   2.   Award Defendant costs and reasonable attorneys fees
        attributable to defense of this action;

AFFIRMATIVE DEFENSES

The Defendant, Ameriquest, hereby raises the following
affirmative defenses in response to the allegations
contained in the Plaintiff's compliant.

FIRST DEFENSE

The Plaintiff's compliant fails to state a claim for which
relief could be granted.

SECOND DEFENSE

The Defendant affirmatively pleads the defense of waiver
and estoppel.

THIRD DEFENSE

The Defendant affirmatively pleads the defense of good
faith and fair dealing.

## FOURTH DEFENSE

The Defendant affirmatively pleads the defense of breach of
contract and failure of consideration.

## FIFTH DEFENSE

Plaintiff's claims are barred in whole or in part
because she has unclean hands.

## SIXTH DEFENSE

The Defendant hereby gives notice that they intend to
rely upon such other defenses as may become available or
appear during the discovery proceedings in this case and
hereby reserves the right to amend their answer to assert
any such defense.

WHEREFORE the Defendant prays that Plaintiff's
complaint be dismissed, that all relief prayed for therein
be denied, that the Defendant be granted their attorneys'
fees and costs incurred in and about the defense of this
action, and that the Defendant be granted such other relief
as may appear to the Court to be just and proper.

Respectfully Submitted,
Ameriquest Mortgage Company
By Its Attorneys

ABLITT & CARUOLO, PC

Dated 1-3-05          /Is/, William J. Amann
                      Brian T. LaManna (657220)
                      William J. Amann (648511)
                      333 North Avenue, 4th Floor
                      Wakefield, Massachusetts 01880
                      (781) 246-8995 Telephone
                      (781) 246-8994 Facsimile

9

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

In re

Jacalyn S. Nosek
      Debtor

_____
                                    }
Jacalyn S. Nosek                    }      Chapter 13
      Plaintiff                     }      Case No. 02-46025-JBR
                                    }
v.                                  }      Adversary Proceeding
                                    }      Case No. 04-04517-JBR
Ameriquest Mortgage Company         }
      Defendant                     }
_____    }


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the foregoing, ANSWER, by mailing a copy first-class, postage prepaid or by serving electronically via CM/ECF, to the following parties:


DATED: 01-04-05                     /Is/, William J.Amann


**Jacalyn S. Nosek**
60 Bolton Road
P.O. Box 1311
South Lancaster, MA 01561

**Attorney Philip M. Stone**
44 Front Street
Worcester, MA 01608

**Richard King**
Office of U.S. Trustee
446 Main Street, 14th Floor
Worcester, MA 01608

**Denise M. Pappalardo**
P.O. Box 16607
Worcester, MA 01601

Page 145

1 through local counsel.
2    A. Correct.
3       MR. STONE: Michael, can you mark this
4 as number 13? It's the Plaintiff's First Request
5 For Admissions.
6       (Document marked.)
7    Q. Ms. Johnston, I'm directing your
8 attention to what's been marked as Exhibit 5 and
9 attached to the Request For Admissions, and ask
10 you to take a look at it.
11      (Handed to witness.)
12   A. Okay.
13   Q. Have you seen that document before?
14   A. Yes.
15   Q. Do you know who generated that
16 document?
17   A. No, I don't.
18   Q. Is it generated by Ameriquest?
19   A. I -- I don't know if it was generated
20 by us or not.
21   Q. Well, at the top of the page here, on
22 the left side, it says "Servicer: Ameriquest
23 Mortgage Company".
24   A. Mm-hmm. Yes, it does.

Page 146

1    Q. Does that help you identify the source
2 of this document?
3    A. No, it does not. As I said, Buchalter
4 and the attorneys that we do foreclosures with,
5 they also have access to Lenstar, so they can see
6 these notes, so it may have been produced by
7 Buchalter, but the information is similar to what
8 I would see on a payment history, generated off
9 our system.
10   Q. I believe you testified a little
11 earlier that Lenstar doesn't have accounting
12 information in it.
13   A. It has to be imported. It is not the
14 accounting system. It's imported.
15   Q. So when someone uses Lenstar, what you
16 described earlier as a calendar or tickler system
17 or note-keeping system, you're saying that
18 Lenstar also has the capability to access the
19 accounting records?
20   A. Lenstar does not. You have to go
21 physically and sign in as a user into the host
22 system.
23   Q. "You" being someone at Ameriquest or
24 "you" being someone at Buchalter?

Page 147

1    A. Buchalter does not have access to our
2 accounting system. They only have access to
3 Lenstar. So whoever the associate would be would
4 say, "Okay, what is the payment amount that is
5 due for whatever post-petition payment?" They'd
6 have to go out of Lenstar, go into what's called
7 MSP.
8    Q. What's that stand for?
9    A. I haven't the foggiest idea.
10   Q. When you talk about "they" going
11 out you're talking about the bankruptcy --
12   A. The bankruptcy associate.
13   Q. At Ameriquest?
14   A. At Ameriquest, would log in to MSP and
15 find out what the payment amount was. Find out
16 the due date. It would not be retained and
17 tracked formally unless a note was made -- it's
18 -- Lenstar isn't going to say, "Oh, a payment
19 posted. I'm going to pull it and put it into our
20 records." That has to be manually done by someone
21 looking --
22   Q. Someone at Ameriquest?
23   A. Someone at Ameriquest.
24   Q. So at Buchalter they have access to

Page 148

1 Lenstar.
2    A. Yes.
3    Q. If they want accounting information
4 they at Buchalter have to contact someone at
5 Ameriquest.
6    A. Yes.
7    Q. Their computer system isn't integrated
8 directly.
9    A. No.
10   Q. Was it ever?
11   A. No.
12   Q. So they never had access.
13   A. No.
14   Q. Do you recognize the name of Jason
15 Syndergaard? Does Jason --
16   A. You know, the name is familiar, but I
17 don't know if he was with Buchalter or if he's
18 with us, AMC. Ameriquest Mortgage Company.
19   Q. Are you saying that Exhibit number 5
20 contains accounting information that was drawn
21 from Ameriquest's computer system?
22   A. It appears to be.
23   Q. Was this one of the screens that you
24 looked at when you prepared your spreadsheet?

Page 149

1    A. No.
2    Q. Would you recognize this screen as
3 being an Ameriquest screen? It has to be.
4    A. Yes. Although there are other
5 servicers who use that, but --
6    Q. It has Ameriquest's name on it?
7    A. Right.
8    Q. It has Ms. Nosek's name on it.
9    A. Again, it's imported from another
10 system, so --
11    Q. Well, another system at Ameriquest.
12 Isn't it? I mean, does Ameriquest ever contract
13 out its accounting to somebody else?
14    A. No.
15    Q. So it's all in-house. All the
16 accounting is in-house, right?
17    A. Yes.
18    Q. This document has an investor number.
19 What does that refer to?
20    A. It's -- our loans are in pools,
21 because we don't own the loans. So whoever that
22 investor number is, it would be in the pool of
23 loans that was sold to that investor. Could be a
24 pool of investors that buy it.

Page 150

1    Q. So who would have the index that would
2 reference the investor number to the name of the
3 investor?
4    A. Jeff Rivas could get that.
5    Q. Just so I'm clear, you're saying that
6 this was not one of the screens you looked at
7 when you prepared your spreadsheet.
8    A. No.
9    MR. STONE: Let's take a break for a
10 minute. I'll be right back.
11    (Short recess.)
12    MR. STONE: Can you mark this, please?
13 This is the Ameriquest Response to the Request
14 For Production of Documents.
15    (Document marked.)
16    Q. I'm assuming, Ms. Johnston, based on
17 what you testified to earlier, that you prepared
18 this response?
19    A. Yes.
20    MR. STONE: And I would just note for
21 the record that the other document that was
22 included in this is the five-page spreadsheet
23 that we marked separately as Exhibit number 9.
24    Q. If I can generalize, just for the sake

Page 151

1 of simplicity here, would it be accurate to
2 summarize the documents produced in response to
3 the request attached to the deposition notice as
4 consisting of a five-page spreadsheet which you
5 prepared, the mortgage and the note as being one
6 set of documents -- I don't know who put the
7 Post-its on -- Mr. Charlton indicates he did --
8 photocopies of checks received, some of which are
9 batches of checks which don't have any
10 information on it? Do these get scanned before
11 they get negotiated?
12    A. Yes.
13    Q. What happens if a check is negotiated
14 and returned NSF? How do you have a notation of
15 that?
16    A. Our bank is notified. It's all done
17 electrically now, so then they notify us that we
18 have a non-sufficient funds check, one that's had
19 a stop payment on it, so then we reverse the
20 payment off the system, or off the loan.
21    Q. So you don't physically get the check
22 back from your bank?
23    A. No.
24    Q. The second -- I guess it's the third

Page 152

1 cluster of documents here appear to be notices
2 generated as to changes in the monthly amounts
3 due? Maybe you can use your own terms to describe
4 that. I refer to them as adjustable loan
5 notification letters.
6    A. I call them ARM letters, but the same
7 thing, adjustable rate mortgage letters, or ARM
8 notices.
9    Q. I prepared a summary earlier, which
10 you should have a copy of.
11    A. Yes.
12    Q. Can you just take a moment and look at
13 the documents you produced, compare them to what
14 I've done there, and confirm that the amounts of the
15 monthly payments and the effective dates are
16 correct? Some of them are copies, and they're
17 hard to read.
18    (Witness examining documents.)
19    Q. How did I do?
20    A. They're pretty goods.
21    Q. Find any mistakes?
22    A. Well, I just looked at the date of the
23 letter --
24    Q. Right, that's all I asked you to look

Page 193

1  cashiering unit.
2      Q. So just to wrap this up, your
3  testimony, then, is that all the payments
4  received by Ameriquest are handled internally by
5  the cashiering department. That Buchalter and
6  Ablitt & Caruolo do not have direct access to the
7  accounting components of the computer system.
8  Correct?
9      A. Correct.
10      Q. And that any information about the
11  accounting issues is solely in-house. No one else
12  can access that.
13      A. Correct.
14      Q. They have to go either through you or
15  through the bankruptcy department.
16      A. Correct.
17      MR. STONE: I don't have any further
18  questions right now. I think we're going to
19  suspend this deposition pending receipt by me of
20  the additional documents.
21      Do you want to take a moment, Bob, and
22  just go over what you've agreed to produce?
23      MR. CHARLTON: We can do that off the
24  record.

Page 194

1      MR. STONE: No, let's do it while
2  Michael is here.
3      MR. CHARLTON: Well, help me.
4      MR. STONE: That's why we're doing it.
5  The bankruptcy department manual.
6      MR. CHARLTON: Bankruptcy manual,
7  Lenstar --
8      MR. STONE: The Lenstar --
9      MR. CHARLTON: Lenstar --
10      MR. STONE: -- records as to this loan.
11      The index as to the transaction codes.
12      MR. CHARLTON: Yes. The printout of the
13  computer screens.
14      MR. STONE: That Ms. Johnston relied on
15  in putting together her Excel spreadsheet.
16      MR. CHARLTON: Yes.
17      MR. STONE: The paper file from the
18  bankruptcy department which hasn't yet been
19  scanned. The supporting documents for the
20  third-party charges. And I agree that you could
21  redact any work product or confidential
22  information on the bills from the attorneys.
23      MR. CHARLTON: Right.
24      MR. STONE: The reports from the

Page 195

1  inspector, housing inspector --
2      Q. That's what you call it? What did you
3  call it?
4      A. We just call it property inspector.
5      Q. Property inspections? Okay.
6      MR. STONE: I'm not sure how we left
7  the conversation about the correspondence from
8  the lawyers that was forwarded with the checks. I
9  don't think you agreed to produce those, and I
10  reserved my rights. Correct?
11      THE WITNESS: We need to supplement
12  that one answer.
13      MR. CHARLTON: We'll supplement the
14  answer to the interrogatory.
15      THE WITNESS: Yes.
16      MR. CHARLTON: So we've got that, then?
17  That seems to be it? Anything else you can think
18  of?
19      The only other thing about suspending
20  the deposition, I don't think I should have to
21  bring Ms. Johnston back to Worcester from
22  California if there's only a limited number of
23  questions regarding these items. That's my only
24  problem with suspending.

Page 196

1      MR. STONE: I would agree, but given
2  the steps that we had to go through to get her
3  here, I will just suspend it, and we won't
4  schedule another date. You'll gather the
5  documents and get them to me.
6      Q. How much time do you think you need?
7      MR. STONE: Where are we with our next
8  hearing in front of the judge? Do we have a
9  pre-trial conference scheduled?
10      MR. CHARLTON: I don't think there's
11  one scheduled. So we do have some time.
12      Q. Three weeks? Twenty days, 30 days?
13      A. Give me about three weeks to get them
14  together.
15      Q. All right.
16      A. Just so I can go through them and make
17  sure I've got them all.
18      Q. I'd rather you take your time and be
19  complete.
20      MR. CHARLTON: Can we agree, though,
21  that if you do have questions it can be done
22  telephonically, so that she doesn't have to fly
23  back?
24      MR. STONE: I would agree with that.

Page 197

1  I'm sure once I see the documents I'll need some
2  assistance in interpreting some of the computer
3  screens, but we can set it up telephonically.
4        MR. CHARLTON: Great. We'll do that
5  then.
6        MR. STONE: Thank you for coming.
7        THE WITNESS: Thank you.
8        (Short recess.)
9
10 CONTINUED EXAMINATION BY MR. STONE:
11
12    Q.  There was an investor number on the
13 payment history that was faxed by -- I believe
14 the gentleman's name was Syndergaard. Jason
15 Syndergaard, to Michael Guarino.
16        MR. STONE: Attorney Charlton, can you
17 stipulate that Michael Guarino was an employee
18 with your firm?
19        MR. CHARLTON: Sure.
20        MR. STONE: He's not there anymore, is
21 he?
22        MR. CHARLTON: Not there, no.
23        MR. STONE: So we're still trying to
24 figure out who Jason Syndergaard is. He might be

Page 198

1  at Ameriquest.
2     A.  He might be.
3     Q.  If you could look into -- he might
4  even work in the bankruptcy department.
5        MR. CHARLTON: We'll make a
6  determination of that --
7        MR. STONE: Can you find out if Mr.
8  Syndergaard is or was an Ameriquest employee?
9        MR. CHARLTON: We'll find that out.
10        (Deposition concluded.)

Page 199

1  COMMONWEALTH OF MASSACHUSETTS
2  WORCESTER, SS.
3     I, Michael Gruber, a notary public in and
4  for the Commonwealth of Massachusetts, do certify
5  that pursuant to appropriate notice of taking
6  deposition, there came before me the subject
7  deponent, who was by me duly sworn; that said
8  witness was thereupon examined under oath and
9  said examination reduced to writing by me; and
10 that the deposition is a true record of the
11 testimony given by the witness.
12    I further certify that I am not a relative or
13 employee of counsel or attorney for any of the
14 parties, or a relative or employee of such
15 counsel or attorney, nor am I financially or
16 otherwise interested in the outcome of the
17 action.
18    Witness my hand and official seal at
19 Worcester, Massachusetts, this 10th day of May
20 2005.
   My Commission Expires
21 November 3, 2011
22 _____
          Notary Public
   The foregoing certification of this transcript
23 does not apply to any reproduction of the same in
24 any respect unless under the direct control of

CERTIFICATE OF SERVICE

I, Philip M. Stone, do hereby certify on this day I electronically filed the foregoing pleading with the United States Bankruptcy Court for the District of Massachusetts using the CM/ECF System.  I served the foregoing document on the following CM/ECF participants:

Steven M. Ablitt, Esq.
Jeffrey K. Garfinkle, Esq.
Denise M. Pappalardo, Esq.
Carolyn A. Bankowski, Esq.
Phoebe Winder, Esq.
R. Bruce Allensworth, Esq.

*and all others receiving notice via the CM/ECF system*

I further certify that I have mailed this day by first-class mail, postage prepaid, a copy of the aforementioned pleading electronically filed with the Court on the following non-CM/ECF participants:

Jacalyn S. Nosek
60 Bolton Road
PO Box 1311
S. Lancaster, MA 01561

/s/ Philip M.  Stone
Philip M. Stone

DATED:        November 26, 2007