UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

In re:

Jacalyn S. Nosek
                    Debtor

Chapter 13
Case No.: 02-46025-JBR

Jacalyn S. Nosek
                    Plaintiff
v.
Norwest Bank, Minnesota, N.A.,
as Trustee for Amresco Residential
Securities Corp.  Mortgage Loan Trust,
Series 1998-2,
                    Defendant

Adv. Pro. No. 07-04109
Related Adv. Pro. No. 04-04517-JBR

Denise M. Pappalardo,
Carolyn A. Bankowski, and
Citi Residential Lending, Inc.
                    Trustee Defendants

**Plaintiff's Opposition to Motion of Norwest Bank, Minnesota, N.A., now known as
Wells Fargo Bank, N.A., to Dismiss Complaint**

<u>INTRODUCTION</u>

It is well-settled law that the principal is bound by the acts of their agent. Under

Massachusetts law it is the duty of the agent to disclose the existence of its principal. When a

creditor sues the agent of a non-disclosed principal, it does not constitute an election to look

solely to the agent for payment.

At no time during the discovery stages and trial of Adv. Pro. No. 04-04517 did Ameriquest Mortgage Company ("Ameriquest"), as the servicing agent, disclose the identity of the principal for whom it was collecting mortgage payments and maintaining mortgage accounting records.

To the contrary, beginning with the Proof of Claim filed in Case No. 02-46025-JBR, Ameriquest Mortgage Company identified itself as the creditor and holder of the mortgage in question.

Ameriquest Mortgage Company did not disclose who the investor number referred to until the *Declaration of Eileen Driscoll Rubens in Support of Opposition to Emergency Motion for Approval of Attachment* on *Trustee Process* was filed with this Court on September 27, 2007.

The *Amended Complaint* asserts a claim against the previously undisclosed principal.

<u>STANDARD OF REVIEW RE: MOTIONS TO DISMISS</u>

A district court may grant a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory". *Pomerleau v. West Springfield Public Schools,* 362 F.3d 143, 145 (1st Cir. 2004) *(citing) Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 52 (1st Cir. 1990).

All factual inferences must be drawn in the plaintiff's favor and against the defendants. *Anyanwu v Columbia Broadcasting System, Inc.*, 887 F. Supp. 690, 692 (S.D.N.Y. 1995), *(citing) Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90

(1974); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989); *Dwyer v. Regan,* 777 F.2d 825, 828-29 (2d Cir. 1985).

Paragraphs 24 and 25 of *Plaintiff's Amended Complaint* are drawn from the *Declaration of Eileen Driscoll Rubens in Support of Opposition to Emergency Motion for Approval of Attachment on Trustee Process*, recently filed with this Court by Ameriquest Mortgage Company.  For the purposes of ruling on a Rule 12(b)(6) motion to dismiss, not only must all factual allegations in the Complaint be presumed to be true, but in this instance Ameriquest Mortgage Company has confirmed the veracity of paragraphs 24 and 25.

### BURDEN OF PROOF

Rule 12(b)(6) also imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355* U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed. 2d 80 (1957). *Accord Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 2232-33, 81 L. Ed. 2d 59 (1984) (quoted in *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 250-51, 109 S. Ct. 2893, 2906, 106 L. Ed. 2d 195 (1989)), *Anyanwu* at 692.

" ... 'the Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim.'" *Brever v. Rockwell International Corporation,* 40 F.3d 1119, 1125 (10th Cir.1994), *(citing) Morgan v. City of Rawlins,* 792 F.2d 975 at 978 (quoting *Auster Oil & Gas Inc. v. Stream,* 764 F.2d 381 (5th Cir. 1985)).

<u>ARGUMENT</u>

<u>1.</u>     <u>No Judgment Has Yet Entered in Adv. Pro. No. 04-04517-JBR.</u>

No *Judgment* has yet been entered in Adv. Pro. 04-04517.  The Bankruptcy Court

issued an *Order* after remand awarding damages, but no *Judgment* has been entered by the

Court Clerk on the docket.

An award is made by a fact finder as to damages only, either by a jury or by a judge

in a jury-waived case.

In its March 6, 2007, *Decision on Remand* in Adv. Pro. 04-04517, this Court stated in

relevant part that: "[c]onsistent with the District Court's decision and the relevant case law,

the Court finds that Nosek is entitled to actual damages for her emotional distress as well as

punitive damages under Section 105(a) for Ameriquest's violation of Section 1322(b). The

Court finds that its previous **award** of $250,000.00 for Nosek's emotional distress is

appropriate and hereby **awards** that amount under Section 105(a). ... "As for punitive

damages, the Court finds that Ameriquest's accounting practices are wholly unacceptable for

a national mortgage lender and hereby **awards** $500,000.00 under Section 105(a)."  (empha-

sis added).

The award of damages is not the same as an entry of judgment. In the ordinary course

the next step should be the award of attorney's fees on a post-trial motion and computation of

pre-trial interest by the Clerk of the Court, or designated deputy, who issues the *Judgment*.

When all appeal remedies have been exhausted, an *Execution* may issue.

Plaintiff asserts that all adversary proceedings should conclude with entry of a

-4-

judgment. Bankruptcy Rule 7054 states that Fed. R. Civ. P. Rules 54(a)-(c)  applies in

adversary proceedings.

Bankruptcy Rule 9021 - Entry of Judgment says:

Rule 9021. Entry of Judgment

Except as otherwise provided herein, Rule 58 F.R.Civ.P. applies in cases

under the Code. Every judgment entered in an adversary proceeding or

contested matter shall be set forth on a separate document. A judgment is

effective when entered as provided in Rule 5003. The reference in Rule 58

F.R.Civ.P. to Rule 79(a) F.R.Civ.P. shall be read as a reference to Rule 5003

of these rules.

Rule 58. Entry of Judgment

.. upon a decision by the court that a party shall recover only a sum certain or

costs or that all relief shall be denied, *the clerk, unless the court otherwise*

*orders, shall forthwith prepare, sign, and enter the judgment without*

*awaiting any direction by the court* (emphasis added).


Bankruptcy Rule 5003. Records Kept By the Clerk says:

(a) Bankruptcy dockets.

The clerk shall keep a docket in each case under the Code and shall enter

thereon each judgment, order, and activity in that case as prescribed by the

Director of the Administrative Office of the United States Courts. The entry of

a judgment or order in a docket shall show the date the entry is made.


The language in the first sentence of Bankruptcy Rule 5003 refers to judgments and

orders as being two separate types of documents.

Similarly, Official Form 32 from the Federal Rules of Court of Massachusetts

"Judgment on Decision by the Court" states that the **clerk is to prepare, sign and enter the judgment** (emphasis added).

There is still no Judgment signed by the Clerk, nor an entry of Judgment appearing on the Docket as of this date.

2.    Nosek does not seek to re-litigate any issue that has already been raised before or decided by this Court.

Nosek does not seek to re-litigate any issue that has already been raised or decided by this Court. This Court's *Findings of Fact* have already been reviewed by the U.S. District Court, and upheld as not being clearly erroneous.

The *Amended Complaint* filed in Adv. Pro. 07-04109 seeks to impose liability upon the principal, Norwest Bank, Minnesota, N.A., as Trustee for Amresco Residential Securities Corp. Mortgage Loan Trust, Series 1998-2, for the amounts awarded by this Court to Ms. Nosek for the culpable acts of its servicing agent at the time, Ameriquest Mortgage Company, plus applicable fees, costs and interest.

The Plaintiff anticipates that the scope of discovery to be conducted in Adv. Pro. 07-04109 will be limited to the terms of the servicing agreement, correspondence and communication between the agent and its principal, and the duties, responsibilities and liabilities of the respective parties.

In its *Motion to Dismiss Complaint*, Norwest at footnote 9 says:

"Norwest strongly disputes Nosek's characterization of the relationship between Ameriquest and Norwest as being one of agent and principal. But for the purposes of Norwest's motion to dismiss, Norwest treats those allegations as true."

-6-

Paragraphs 28 - 32, and paragraphs 35 - 36 of the *Amended Complaint* set forth a cause of action against Norwest Bank, Minnesota, N.A., as Trustee for Amresco Residential Securities Corp. Mortgage Loan Trust, Series 1998-2, and must be accepted as true for purposes of this motion to dismiss.

3.    It Is the Duty of the Agent, to Disclose Not Only That He Is Acting in a Representa-
tive Capacity, but Also the Identity of His Principal.

Under Massachusetts law, "[i]t is the duty of the agent, if he would avoid [personal] liability on a contract entered into by him on behalf of his principal, to disclose not only that he is acting in a representative capacity, but also the identity of his principal." *Atlantic Salmon A/S & Another v. Michael P. Curran*,  32 Mass. App. Ct. 488, 491-492; 591 N.E.2d 206  (1992) *(citing) Merriam* v. *Wolcott*, 3 Allen 258, 261 (1861). See, *Meyers-Leiber Sign Co. v. Weirich,* 2 Ariz. App. 534, 536 (1966); *J & J Builders Supply v. Caffin,* 248 Cal. App. 2d 292, 295 (1967); *W. W. Leasing Unlimited v. Commercial Standard Title Ins. Co.,* 149 Cal. App. 3d 792, 795 (1983); *New England Whalers Hockey Club v. Nair,* 1 Conn. App. 680, 683 (1984); *Chambliss v. Hall,* 113 Ga. App. 96, 99 (1966); *Lachmann v. Houston Chronical Publishing Co.,* 375 S.W.2d 783, 785 (Tex. Ct. App. 1964); *Anderson v. Smith,* 398 S.W.2d 635, 637 (Tex. Ct. App. 1965); *A to Z Rental Center v. Burris,* 714 S.W. 2d 433, 435 (Tex. Ct. App. 1986).

In Adv. Pro. No. 04-04517-JBR the plaintiff Nosek had notice only that an investor existed who was identified by a number, but whose actual identity was never disclosed by Defendant Ameriquest Mortgage Company during the pendency of that adversary proceed-

-7-

ing.

At no time did Ameriquest raise as an *Affirmative Defense* as required by Bankruptcy Rule 7012 that Plaintiff had failed to join a necessary party under Rule 19. See **Exhibit 1-A**, *Ameriquest's Answer to Complaint with Affirmative Defenses,* attached. Relevant excerpts from the *Complaint* are attached as **Exhibit 1-B**.

4.    The Bringing of an Action Against the Agent in Ignorance of the Existence of the Principal Is Not an Election Because There Has Never Been a Choice

In *Gavin v. Durden Coleman Lumber Co.,* 229 Mass. 576, 578-579, 118 N.E. 897 (1918), the Massachusetts Supreme Judicial Court said: "(i)t is the settled law that a person dealing with an agent of an undisclosed principal may, upon discovery of the principal, resort to him or to the agent with whom he deals at his election. *Raymond v. Crown & Eagle Mills,* 2 Metc. 319. And it is equally well settled that an election once made with **full knowledge of the liability of the newly discovered principal, determines the right and obligations of the parties. ...** The bringing of an action against the agent with knowledge of the liability of the principal, is not conclusive of an election unless followed to a judgment. *Raymond v. Crown & Eagle Mills*, supra; *Kingsley v. Davis, 104 Mass. 178*; *Estes v. Aaron, 227 Mass. 96, 116 N. E. 392*; Priestly v. Fernie, 3 H. & C. 977. **The bringing of an action against the agent, followed by his default and the entry of judgment by the creditor in ignorance of the existence of the principal, is not an election because there has never been an opportunity to make a choice**. *Greenburg v. Palmieri, 71 N. J. Law, 83, 58 Atl. 297*;

-8-

*Lindquist v. Dickson, 98 Minn. 369, 107 N. W. 958, 6 L. R. A. (N. S.) 729, 8 Ann. Cas. 1024.*"

(emphasis added). *Gavin* at 578-579.

*Gavin* is on all fours with Adv. Pro. No. 04-04517.  Ameriquest Mortgage Company

never disclosed the identity of its principal. Nosek has never had an opportunity to inquire

into the nature of Ameriquest's relationship with, or pursue her remedies against Norwest

Bank, Minnesota, N.A., the Trustee for Amresco Residential Securities Corp. Mortgage Loan

Trust, Series 1998-2.

5.      Ameriquest Mortgage Company represented to this Court on numerous documents
        that it was the holder of the Note and Mortgage at issue.

        As this Court noted at the hearing held on November 26, 2007, Ameriquest Mortgage

Company and its attorneys filed with this Court on numerous occasions documents stating

that Ameriquest Mortgage Company was the holder of the Note and Mortgage at issue.

        Such representations include the Proof of Claim dated October 16, 2002, attached

here as **Exhibit 2** to which the Note and Mortgage were attached, and the Amended Proof of

Claim dated April 22, 2003, attached here as **Exhibit 3**.

        In both instances John Testa signed a Proof of Claim which said:

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Ameriquest Mortgage Company

        The *Motion for Relief from Stay* filed on February 26, 2003 [docket item # 29]

attached here as **Exhibit 4** also states that Ameriquest Mortgage Company was the holder of

the Note and Mortgage.

        In the adversary proceeding, in paragraph 5. of Ameriquest's *Answer* (attached here as

-9-

**Exhibit 1-A**) to the *Complaint* (attached here as **Exhibit 1-B**) filed in Adv. Pro. No. 04-04517-JBR Ameriquest "ADMITS" that Ameriquest is the holder of a first position mortgage on the Property in the original amount of $90,000 given by Nosek to Ameriquest on or about November 25, 1997.

Furthermore, the printout of the index maintained by the Worcester South Registry of Deeds of all real estate matters concerning Jacalyn S. Nosek for the period January 1, 1966 through November 28, 2007, is attached here as **Exhibit 5**. No recorded Assignment of the mortgage given to Ameriquest Mortgage Company appears in this index.

On this record Norwest cannot claim that Nosek had actual notice that Norwest was the actual holder of the Note and mortgage.

6.      Under General Rules of Agency Law, Principals Are Liable When Their Agents Act with Apparent Authority and Commit Torts

As Plaintiff previously stated in her *Opposition to Cross-Motion of Ameriquest Mortgage Company to Dismiss Complaint*, the U.S. Supreme Court held in *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982), that under general rules of agency law, principals are liable when their agents act with apparent authority and commit torts.

"In a wide variety of areas, the federal courts, like this Court in *Gleason*, have imposed liability upon principals for the misdeeds of agents acting with apparent authority. See, *e. g., Dark v. United States,* 641 F.2d 805 (CA9 1981) (federal tax liability); *National Acceptance Co*. v. *Coal Producers Assn.,* 604 F.2d 540 (CA7 1979) (common-law fraud); *Holloway v.*

-10-

*Howerdd,* 536 F.2d 690 (CA6 1976) (federal securities fraud); *United States v. Sanchez,* 521 F.2d 244 (CA5 1975) (bail bond fraud), cert. denied, 429 U.S. 817 (1976); *Kerbs v. Fall River Industries, Inc.,* 502 F.2d 731 (CA10 1974) (federal securities fraud); *Gilmore v. Constitution Life Ins. Co., 502 F.2d 1344 (CA10 1974)* (common-law fraud). *ASME v. Hydrolevel* at 567-568.

...

In addition,

"(a) majority of courts, [however], have held corporations liable for punitive damages imposed because of the acts of their agents, in the absence of approval or ratification. See W. Prosser, Law of Torts 12 (4th ed. 1971). *E. g., Kelite Products, Inc.* v. *Binzel,* 224 F.2d 131, 144 (CA5 1955) ("[The] jury may in its discretion assess punitive damages against a corporate defendant for oppressive acts of its agent done in the course of his employment, regardless of actual authority or ratification"); *Mayo Hotel Co.* v. *Danciger,* 143 Okla. 196, 200, 288 P. 309, 313 (1930) (holding corporate principal liable for punitive damages, noting that "the legal malice of the servant is the legal malice of the corporation"). In fact, the Court may have departed from the trend of late 19th-century decisions when it issued *Lake Shore & M.S.R. Co.* v. *Prentice,* 147 U.S. 101 (1893), requiring the principal's participation, approval, or ratification. See *Singer Manufacturing Co.* v. *Holdfodt,* 86 Ill. 455, 459 (1877) ("if the wrongful act of the agent is perpetrated while ostensibly discharging duties within the scope of the corporate purposes, the corporation may be liable to vindictive damages"); see also *Pullman Palace Car Co.* v. *Lawrence,* 74 Miss. 782, 803-805, 22 So. 53, 57-59 (1897); *Goddard v. Grand Trunk R. Co.,* 57 Me. 202, 223-224 (1869); *(cited in) American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.* at 576.

<u>CONCLUSION</u>

In her *Amended Complaint*, the Plaintiff has put forward a viable theory of recovery on her claims against  Norwest Bank, Minnesota, N.A., now known as Wells Fargo Bank, N.A., as Trustee for Amresco Residential Securities Corp.  Mortgage Loan Trust, Series 1998-2, which is supported by decisions of the United States Supreme Court and the Supreme Judicial Court of Massachusetts.

Norwest Bank, Minnesota, N.A., has not met its burden of demonstrating "beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief", or that "the plaintiff cannot recover on any viable theory".   Plaintiff requests that the motion of Norwest Bank, Minnesota, N.A., now known as Wells Fargo Bank, N.A., to dismiss be DENIED.

Jacalyn Nosek
By her attorney,

/s/ Philip M.  Stone
Philip M. Stone, BBO # 544139
44 Front Street
Worcester, MA  01608
Tel. (508) 755-7354
Fax.  (508) 752.3730
E-mail: pstonelaw@rcn.com

Dated:          January 28, 2008

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

In re

Jacalyn S. Nosek
     Debtor
_____
                                 }
Jacalyn S. Nosek                 }       Chapter 13
     Plaintiff                   }       Case No. 02-46025-JBR
                                 }
v.                               }       Adversary Proceeding
                                 }       Case No. 04-04517-JBR
Ameriquest Mortgage Company      }
     Defendant                   }
_____}

ANSWER OF DEFENDANT, AMERIQUEST MORTGAGE COMPANY,
TO COMPLAINT FOR ADVERSARY PROCEEDING OF
PLAINTIFF, JACALYN S. NOSEK

To The Honorable Joel B. Rosenthal:

INTRODUCTION

    DEFENDANT, AMERIQUEST MORTGAGE COMPANY (HEREINAFTER
"DEFENDANT"), HEREBY ANSWER THE COMPLAINT OF JACALYN S. NOSEK,
(HEREINAFTER "PLAINTIFF") AS FOLLOWS:

PARTIES

1.   The Defendant admits the allegations contained in
     paragraph 1 based upon information and belief.

2.   The Defendant admits the allegations contained in
     paragraph 2.

ALLEGATIONS COMMON TO ALL COUNTS

3.   The Defendant admits the allegations contained in
     paragraph 3.

4.   The Defendant is without sufficient knowledge or
     information to admit or deny the allegations in

1

paragraph number 4 of the Plaintiff's complaint and call upon Plaintiff to prove same.

5.    The Defendant admits the allegations contained in paragraph 5.

6.    The Defendant denies the allegations contained in paragraph 6.

7.    The Defendant denies the allegations contained in paragraph 7.

8.    The Defendant admits the allegations contained in paragraph 8.

9.    The Defendant admits the allegations contained in paragraph 9.

10.    The Defendant admits the allegations contained in paragraph 10.

11.    The Defendant denies the allegations contained in paragraph 11 as stated.

12.    The Defendant denies the allegations contained in paragraph 12.

13.    The Defendant denies the allegations contained in paragraph 13.

14.    The Defendant is without sufficient information to admit or deny the allegations contained in paragraph 14 and call upon Plaintiff to prove same.

15.    The Defendant is without sufficient information to admit or deny the allegations contained in paragraph 15 and call upon Plaintiff to prove same.

16.    The Defendant denies the allegations contained in paragraph 16.

17.    The Defendant denies the allegations contained in paragraph 17.

18.    The Defendant admits the allegations contained in paragraph 18.

19. The Defendant is without sufficient information to admit or deny the allegations contained in paragraph 19 and call upon Plaintiff to prove same.

20. The Defendant denies the allegations contained in paragraph 20.

21. The Defendant is without sufficient information to admit or deny the allegations contained in paragraph 21 and call upon Plaintiff to prove same.

22. The Defendant admits the allegations contained in paragraph 22.

23. The Defendant is without sufficient information to admit or deny the allegations contained in paragraph 23 and call upon Plaintiff to prove same.

24. The Defendant denies the allegations contained in paragraph 24.

25. The Defendant denies the allegations contained in paragraph 25.

26. The Defendant denies the allegations contained in paragraph 26 and is without sufficient information to admit or deny the allegations contained in "Exhibit 3" and call upon Plaintiff to prove same.

27. The Defendant denies the allegations contained in paragraph 27.

28. The Defendant denies the allegations contained in paragraph 28.

29. The Defendant denies the allegations contained in paragraph 29.

30. The Defendant denies the allegations contained in paragraph 30.

31. The Defendant admits the allegations contained in paragraph 31.

32. The Defendant denies the allegations contained in paragraph 32.

3

33.   The Defendant admits the allegations contained in
      paragraph 33.

34.   The Defendant admits the allegations contained in
      paragraph 34.

35.   The Defendant denies the allegations contained in
      paragraph 35.

36.   The Defendant denies the allegations contained in
      paragraph 36.

37.   The Defendant admits the allegations contained in
      paragraph 37.

38.   The Defendant admits the allegations contained in
      paragraph 38.

39.   The Defendant admits the allegations contained in
      paragraph 39.

40.   The Defendant denies the allegations contained in
      paragraph 40.

41.   The Defendant admits the allegations contained in
      paragraph 41.

42.   The Defendant admits the allegations contained in
      paragraph 42.

43.   The Defendant denies the allegations contained in
      paragraph 43.

44.   The Defendant admits the allegations contained in
      paragraph 44.

                         COUNT I
                  TRUTH IN LENDING ACT

45.   The Defendant repeats and reallege their answers to
      paragraphs 1 through 44 above and incorporate them
      herein by reference.

46.   The Defendant admits the allegations contained in
      paragraph 46.

47.   The allegations contained in paragraph 47 are
      allegations of law to which no response is required
      and none is given.  To the extent that the allegations
      contained in paragraph 47 are intended to allege any
      liability or wrongdoing against the Defendants, they
      are denied.

48.   The Defendant denies that the interest rates charged
      by Ameriquest do not comport with the Terms of the
      Note.  The Defendant admits the remainder of paragraph
      48.

49.   The Defendant denies the allegations contained in
      paragraph 49.

50.   The Defendant denies the allegations contained in
      paragraph 50.

51.   The Defendant denies the allegations contained in
      paragraph 51.

52.   The allegations contained in paragraph 52 are
      allegations of law to which no response is required
      and none is given.  To the extent that the allegations
      contained in paragraph 52 are intended to allege any
      liability or wrongdoing against the Defendants, they
      are denied.

      WHEREFORE the Defendant requests judgment in their
      favor plus costs and such further relief as the Court
      deems just and proper.

                         COUNT II
            QUALIFIED WRITTEN REQUEST UNDER RESPA

53.   The Defendant repeats and realleges their answers to
      paragraphs 1 through 52 above and incorporate them
      herein by reference.

54.   The Defendant denies the allegations contained in
      paragraph 54.

55.   The Defendant denies the allegations contained in
      paragraph 55.

WHEREFORE the Defendant requests judgment in their favor plus costs and such further relief as the Court deems just and proper.

COUNT III
MGL c. 93A, §§2 and 9

56.   The Defendant repeats and realleges their answers to paragraphs 1 through 55 above and incorporate them herein by reference.

57.   The Defendant admits the allegations contained in paragraph 57.

58.   The Defendant denies the allegations contained in paragraph 58.

59.   The Defendant denies the allegations contained in paragraph 59.

60.   The Defendant is without sufficient information to admit or deny the allegations contained in paragraph 60 of the Plaintiff's complaint and call upon Plaintiff to prove same.

61.   The Defendant denies the allegations contained in paragraph 61.

62.   The Defendant denies the allegations contained in paragraph 62.

63.   The Defendant denies the allegations contained in paragraph 63.

WHEREFORE the Defendant requests judgment in their favor plus costs and such further relief as the Court deems just and proper.

COUNT IV
UNJUST ENRICHMENT

64.   The Defendant repeats and realleges their answers to paragraphs 1 through 63 above and incorporate them herein by reference.

65.   The Defendant denies the allegations contained in paragraph 65.

WHEREFORE the Defendant requests judgment in their
favor plus costs and such further relief as the Court
deems just and proper.

COUNT V
BREACH OF IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING

66.  The Defendant repeats and reallege their answers to
     paragraphs 1 through 65 above and incorporate them
     herein by reference.

67.  The Defendant denies the allegations contained in
     paragraph 67.

WHEREFORE the Defendant requests judgment in their
favor plus costs and such further relief as the Court
deems just and proper.

COUNT VI
INFLICTION OF EMOTIONAL DISTRESS

68.  The Defendant repeats and reallege their answers to
     paragraphs 1 through 44 above and incorporate them
     herein by reference.

69.  The Defendant denies the allegations contained in
     paragraph 69.

70.  The Defendant denies the allegations contained in
     paragraph 70.

71.  The Defendant denies the allegations contained in
     paragraph 71.

72.  The Defendant denies the allegations contained in
     paragraph 72.

73.  The Defendant is without sufficient information to
     admit or deny the allegations contained in paragraph
     73 and call upon Plaintiff to prove same.

WHEREFORE the Defendant requests judgment in their
favor plus costs and such further relief as the Court
deems just and proper.

COUNT VII
LOST INCOME

74.    The Defendant repeats and reallege their answers to
paragraphs 1 through 44 above and incorporate them
herein by reference.

75.    The Defendant denies the allegations contained in
paragraph 75.

76.    The Defendant is without sufficient information to
admit or deny the allegations contained in paragraph
76 and call upon Plaintiff to prove same.

WHEREFORE the Defendant requests judgment in their
favor plus costs and such further relief as the Court
deems just and proper.

WHEREFORE, Defendant respectfully request this Court;

1.    Find in favor of Defendant on all counts set forth
in Plaintiff's complaint;

2.    Award Defendant costs and reasonable attorneys fees
attributable to defense of this action;

AFFIRMATIVE DEFENSES

The Defendant, Ameriquest, hereby raises the following
affirmative defenses in response to the allegations
contained in the Plaintiff's compliant.

FIRST DEFENSE

The Plaintiff's compliant fails to state a claim for which
relief could be granted.

SECOND DEFENSE

The Defendant affirmatively pleads the defense of waiver
and estoppel.

THIRD DEFENSE

The Defendant affirmatively pleads the defense of good
faith and fair dealing.

8

## FOURTH DEFENSE

The Defendant affirmatively pleads the defense of breach of contract and failure of consideration.

## FIFTH DEFENSE

Plaintiff's claims are barred in whole or in part because she has unclean hands.

## SIXTH DEFENSE

The Defendant hereby gives notice that they intend to rely upon such other defenses as may become available or appear during the discovery proceedings in this case and hereby reserves the right to amend their answer to assert any such defense.

WHEREFORE the Defendant prays that Plaintiff's complaint be dismissed, that all relief prayed for therein be denied, that the Defendant be granted their attorneys' fees and costs incurred in and about the defense of this action, and that the Defendant be granted such other relief as may appear to the Court to be just and proper.

Respectfully Submitted,
Ameriquest Mortgage Company
By Its Attorneys

ABLITT & CARUOLO, PC

Dated 1-3-05              /Is/, William J. Amann
                         Brian T. LaManna (657220)
                         William J. Amann (648511)
                         333 North Avenue, 4th Floor
                         Wakefield, Massachusetts 01880
                         (781) 246-8995 Telephone
                         (781) 246-8994 Facsimile

9

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

In re

Jacalyn S. Nosek
     Debtor

_____
                         }
Jacalyn S. Nosek          }    Chapter 13
     Plaintiff         }    Case No. 02-46025-JBR
                         }
v.                  }    Adversary Proceeding
                         }    Case No. 04-04517-JBR
Ameriquest Mortgage Company  }
     Defendant        }
_____}

### CERTIFICATE OF SERVICE

     I hereby certify that I have this day served a copy of
the foregoing, ANSWER, by mailing a copy first-class,
postage prepaid or by serving electronically via CM/ECF, to
the following parties:


DATED: 01-04-05               /Is/, William J.Amann


**Jacalyn S. Nosek**
60 Bolton Road
P.O. Box 1311
South Lancaster, MA 01561

**Attorney Philip M. Stone**
44 Front Street
Worcester, MA 01608

**Richard King**
Office of U.S. Trustee
446 Main Street, 14th Floor
Worcester, MA 01608

**Denise M. Pappalardo**
P.O. Box 16607
Worcester, MA 01601

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

In re:

Jacalyn S. Nosek
         Debtor

Chapter 13
Case No.: 02-46025-JBR

Jacalyn S. Nosek
         Plaintiff
v.
Ameriquest Mortgage Company
         Defendant

Adversary Proceeding No.

## **Complaint**

## INTRODUCTION

     Plaintiff brings this action to secure redress from unlawful mortgage servicing practices engaged in by Ameriquest Mortgage Company.

     Plaintiff alleges violation of (i) the Truth in Lending Act, 15 U.S.C. §§1601 *et seq*. ("TILA") and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226, (ii) the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601 *et seq*. ("RESPA") and HUD implementing Regulation X, 24 CFR Part 3500, *et seq*. and (iii) Massachusetts General Laws Chapter 93A.

## PARTIES

1.     The Plaintiff Jacalyn S. Nosek, ("Nosek") the Debtor in this pending chapter 13 case, is an individual who resides at 60 Bolton Road, S. Lancaster, MA 01561 ("the Property").

2.      The Defendant Ameriquest Mortgage Company ("Ameriquest ") has a mailing address of

1100 Town & Country Road, Suite 200, Orange, CA 92868.  Upon information and

belief, Ameriquest Mortgage Company is a wholly owned subsidiary of Ameriquest

Capital Corporation, a privately held corporation.

ALLEGATIONS COMMON TO ALL COUNTS

3.      On October 22, 2002, the Debtor filed a petition under Chapter 13 of the United States

Bankruptcy Code in the United States Bankruptcy Court for the District of

Massachusetts.

4.      Debtor's bankruptcy filing was prompted by an imminent mortgage foreclosure sale by

Ameriquest.

5.      Ameriquest is the holder of a first position mortgage on the Property in the original

amount of $90,000 given by Nosek to Ameriquest on or about November 25, 1997.  A

copy of the Note and Mortgage are attached as **Exhibit 1**.

6.      Upon the filing of the bankruptcy petition, the first post-petition payment due was

tendered directly by debtor's counsel on November 1, 2002 to: ATTN: Darlene,

Buchalter, Nemer, Fields & Younger, 895 Dove Street, Ste. 400, P.O. Box 8129,

Newport Beach, CA  92660.

7.      The Debtor sent the December, 2002 payment due to Ameriquest, which returned the

check to her, thereby manufacturing an on-going late payment situation.

8.      During the pendency of this bankruptcy case Ameriquest retained the Massachusetts law

firm of Ablitt & Caruolo, PC, 333 North Avenue, 4th Floor, Wakefield, MA 01880 as

local counsel.

| United States Bankruptcy Court | Massachusetts District of Massachusetts | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor  Jacalyn S. Nosek | Case Number  02-46025-JBR |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | | |
|---|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Ameriquest Mortgage Company | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
| Name and address where notices should be sent:<br><br>Ameriquest Mortgage Company<br>P.O. BOX 5646<br>Orange, CA  92863<br><br>Attn:  John Teston<br><br>Telephone number:  (800) 430-5262 | ☐ Check box if you have never received any notices from the bankruptcy court in this case<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | **This space is for Court Use Only** |
| Account or other number by which creditor identifies debtor:<br>0004219515 | Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated: _____ | |

| 1. **Basis for Claim** | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) |
|---|---|
| ☐ Goods sold<br>☐ Services performed<br>☒ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☐ Other_____ | ☐ Wages, salaries, and compensation (Fill out below)<br><br>Your SS#: _____ - _____ - _____<br><br>Unpaid compensation for services performed<br><br>from _____ to _____<br>(date)                        (date) |

| 2. **Date debt was incurred:  November 25, 1997** | 3. **If court judgment, date obtained:** |
|---|---|

**4. Total Amount of Claim at Time Case Filed:** $107,511.36
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 5. **Secured Claim.** | 6.**Unsecured Priority Claim.** |
|---|---|
| ☒ Check this box if your claim is secured by collateral (including a right of setoff).<br><br>Brief Description of Collateral:<br>☒ Real Estate   ☐ Motor Vehicle<br>☐ Other_____<br><br>Value of Collateral:<br><br><br>Amount of arrearage and other charges <u>at time case filed</u> included in secured claim, if any $19,789.14 | ☐ Check this box if you have an unsecured priority claim<br>Amount entitled to priority  $ _____<br>Specify the priority of the claim:<br>☐ Wages, salaries, or commissions (up to $4,300),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3)<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).<br>☐ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a-____).<br>*Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| | This Space Is for Court Use Only |
|---|---|
| 7. **CREDITS:**  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br>8. **Supporting Documents:**  *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br>9. **Date-Stamped Copy:**  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | |

| Date<br>October 16, 2002 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>John Teston |
|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

Addendum "A"
In re Jacalyn S. Nosek
Bankruptcy Case No. 02-46025-JBR

As of the date of filing of the within bankruptcy case on October 2, 2002, there were arrearages due and
owing as follows:

| | |
|---|---|
| 4 payments at $949.70 each<br>(September 1, 2001 through December 1, 2001) | $3,798.80 |
| 6 payments at $884.38 each<br>(January 1, 2002 through June 1, 2002) | $5,306.28 |
| 4 payments at $820.96 each<br>(July 1, 2002 through October 1, 2002) | $3,283.84 |
| 4 late charges at $28.49 each<br>(September 16, 2001 through December 16, 2001) | $113.96 |
| 6 late charges at $26.53 each<br>(January 16, 2002 through June 16, 2002) | $159.18 |
| 3 late charges at $24.63 each<br>(July 16, 2002 through September 16, 2002) | $73.89 |
| Late Charges | $165.91 |
| Property Inspections | $193.50 |
| NSF Fees | $10.00 |
| Foreclosure Fees and Costs | $4,161.50 |
| Appraisal | $650.00 |
| Suspense Balance | <$1,067.72> |
| Prior BK Legal Fees | $2,915.00 |
| Property tax adv | $25.00 |
| Total Arrears | $19,789.14 |
| Principal Balance | $87,722.22 |
| Total Debt | $107,511.36 |

Loan No. 4219515-5610

# ADJUSTABLE RATE RIDER

### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this    25th    day of    November    ,
1997    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to    AMERIQUEST MORTGAGE COMPANY
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

60 BOLTON RD
SOUTH LANCASTER, MA  01561

[Property Address]

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower, and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of    7.500    %. The Note provides for changes in the
interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
   (A) Change Dates
   The interest rate I will pay may change on the first day of    June    , 1998    , and on that
day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

   (B) The Index
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average
of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as
published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each
Change Date is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information. The Note Holder will give me notice of this choice.

   (C) Calculation of Changes
   Before each Change Date, the Note Holder will calculate my new interest rate by adding    Six and Three
Fourths    percentage points(s) (    6.750    %) to
the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one
percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my
new interest rate until the next Change Date.
   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay
the unpaid principal that I am expected to owe a the Change Date in full on the Maturity Date at my new interest
rate in substantially equal payments. The result of this calculation will be the new amount of my monthly
payment.

ADJUSTABLE RATE RIDER - LIBOR INDEX                    Page 1 of 2                    Initials: _____

1995RM (REV. 9/97) TLG

Loan No. 4219515-5610

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than      8.500      %
or less than      7.500      %.  Thereafter, my interest rate will never be increased or decreased on
any single Change Date by more than      One      percentage point(s)
(      1.000      %) from the rate of interest I have been paying for the preceding six months. My
interest rate will never be greater than      13.500      % or less than      7.500      %.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly
payment beginning on the first monthly payment date after the Change Date until the amount of my monthly
payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my
monthly payment before the effective date of any change. The notice will include information required by law to
be given me and also the title and telephone number of a person who will answer any question I may have
regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  If all or any part of the Property or any
interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not
a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in
full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if
exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this
option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended
transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's
security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in
this Security Instrument is acceptable to Lender.

To the extend permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's
consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is
acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note
and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security
Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of
acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or
mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay
these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security
Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable
Rate Rider.

_____  (Seal)      _____  (Seal)
JACALYN S NOSEK                                    -Borrower                                         -Borrower

_____  (Seal)      _____  (Seal)
                                                   -Borrower                                         -Borrower

ADJUSTABLE RATE RIDER - LIBOR INDEX                 Page 2 of 2                 Initials: _____

1999XB (4-1-97)  TLG

ATTEST: WORC. Anthony J. Vigliotti, Register

When recorded, mail to:

134662

AMERIQUEST MORTGAGE COMPANY
P.O. BOX 11507
SANTA ANA, CA 92711

LOAN NO. 4219515-5610

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on        November    25 ,  1997            . The mortgagor is
    JACALYN S NOSEK

("Borrower"). This Security Instrument is given to
        AMERIQUEST MORTGAGE COMPANY

which is organized and existing under the laws of    the State of Delaware                                    , and whose
address is    1100 TOWN & COUNTRY RD., STE. 200
        ORANGE, CA 92868                        ("Lender"). Borrower owes Lender the principal sum of
    Ninety Thousand and no/100-------------------------------------------------------------
                                        Dollars (U.S. $        90,000.00         ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on        December    1 ,   2027
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power
of sale, the following described property located in        WORCESTER                    County, Massachusetts:
    LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of  60  BOLTON RD                            SOUTH LANCASTER    [Street, City],
Massachusetts        01561
                                    [Zip Code]  ("Property Address");

MASSACHUSETTS-Single Family-FNMA/FHLMC
        UNIFORM INSTRUMENT  Form 3022  9/90
-6H(MA) (9403).01                    Amended 12/93
    VMP MORTGAGE FORMS - (800)521-7291
    TDMA1 (REV 3/97)TS
Page 1 of 8                    Initials: 

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property: (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and, last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

Form 3022   9/90

-6H(MA) (9403).01
TOM A2 (REV 3/9)(IS)

Page 2 of 6

Initials _____

Loan No. 4219515-5610

BOOK 19404 PAGE 105

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, or any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

Form 3022   9/90

-6H(MA) (9401) 01
TDMA3 (REV 3/97)15

Page 3 of 8

Initials: 

Loan No. 4219515-5610

payments may no longer be require... the option of Lender, if mortgage insurance coverage... amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payment.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Sec rity Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice rovided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in th.. paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

Form 3022   9/90

-6H(MA) (9403).01
FDMA/FREV 3/97)ES

Page 4 of 6

Initials

Loan No. 4219515-5610

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the

Form 3022 9/90

-6H(MA) (9403) 01
TDMA5 (REV.3/97)TS

Page 5 of 6

Initials:

Loan No. 4219515-5610

notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Release.  Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument to Borrower.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

23. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] V.A. Rider | [ ] Other(s) [specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____    _____ (Seal)
                                      JACALYN S NOSEK                   -Borrower

_____    _____ (Seal)
                                                                        -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                                      -Borrower

COMMONWEALTH OF MASSACHUSETTS,                      County ss: Worcester

On this   25TH   day of   November , 1997 , before me personally appeared
              Jacalyn S. Nosek
                                                                        , to me
known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he she/they executed the same as his/her/their free act and deed.

My Commission Expires:

9/24/2004                                    _____
                                             Notary Public
                                             R. Henry Cranston Jr.

-6H(MA) (9403) 01                    Page 6 of 6                    Form 3022  9/90
TDM46 (REV 3/97)5

Loan No. 4219515-5610

## EXHIBIT A

re: Jacalyn S. Nosek with a Life Estate reserved for Joseph S. Nosek

That certain lot or parcel of land with any buildings thereon located in the Municipality of S. Lancaster, Worcester County, State of Mass; bounded and described as referenced below.

Beginning at the southeasterly corner of the lot on the northerly side of South Lancaster-Bolton Road at land now or formerly of one Lavigne.

Thence on said road S 59° 59' W forty-eight and 29/100 (48.29) feet to a cement bound at land now or formerly of one Christianson;

Thence on said Christianson land N 63° 16' W seventy-seven and 5/10 (77.5) feet to a cement bound;

Thence on land of Martha L. Howard, Trustee, N 39° 49' E eighty-three and 06/100 (83.06) feet;

Thence by land of said Martha L. Howard, Trustee, and land of said Lavigne S 43° 46' East fifty-one and 29/100 (51.29) feet;

Thence by said Lavigne land S 30° 21' E forty-three and 85/100 (43.85) feet to the point of beginning.

Subject to a Right of Way as described in a deed from Jeannette M. McDunn et al to Michael P. McDunn et ux dated November 14, 1957, recorded with Worcester District Registry of Deeds in Book 3907, Page 183.

Subject to and with the benefit of any and/or all rights, restrictions, covenants and easements of record, insofar as the same may be in force and applicable.

For title see deed dated 4-22-96 from Joseph S. Nosek, to Jacalyn S. Nosek with a Life Estate reserved for Joseph S. Nosek, recorded in the Worcester County Registry of Deeds Book 17841, Page 383.

## PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is at Buchalter, Nemer, Fields & Younger, A Professional Corporation, 895 Dove Street, Suite 400, P.O. Box 8129, Newport Beach, California 92658-8129.

On __October 22, 2002__ , I served the foregoing documents described as:

**PROOF OF CLAIM**

on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof in a sealed envelope as follows:

### ***SEE ATTACHED LIST***

[XX]   BY MAIL     I am a resident of, or employed in, the county where the mailing occurs; I am over the age of 18 years and am not a party to the cause. I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. The correspondence will be deposited with the United States Postal Service this same day in the ordinary course of business. The address(es) shown above is(are) the same as shown on the envelope. The envelope was placed for deposit in the United States Postal Service at Buchalter, Nemer, Fields & Younger in Newport Beach, California on __October 22, 2002__ . The envelope was sealed and placed for collection and mailing with first-class prepaid postage on that date following ordinary business practices. Service made pursuant to CCP § 1013a(3), upon motion of a party served, shall be presumed invalid if the postal cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing contained in the affidavit.

[XX]   <u>Federal</u>        I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.


[ ]    <u>State</u>          I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.


Executed on __October 22, 2002__ , at Newport Beach, California.


_____STACIE KELLEY_____          _____
                                              (Signature)

Service List
In re **Jacalyn S. Nosek**
Case No.**02-46025-JBR**

**Debtor Attorney:**
Philip M. Stone
27-29 Mechanic St.
Worcester, MA  01608

**Chapter 13 Trustee:**
Denise M. Pappalardo
P. O. Box 16607
Worcester, MA  01601

proof of service

Exhibit 3

FORM B10 (Official Form 10) (Rev. 4/98)

| United States Bankruptcy Court     District of Massachusetts | AMENDED PROOF OF CLAIM |
|---|---|

| Name of Debtor  Jacalyn S. Nosek | Case Number  02-46025-JBR |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Name of Creditor** (The person or other entity to whom the debtor owes money or property):

Ameriquest Mortgage Company

**Name and address where notices should be sent:**

Ameriquest Mortgage Company
P.O. BOX 5646
Orange, CA  92863

Attn:  John Teston

Telephone number: (714) 634-2474

❑ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

❑ Check box if you have never received any notices from the bankruptcy court in this case

❑ Check box if the address differs from the address on the envelope sent to you by the court.

EXHIBIT 8
(illegible)
McCARTHY REPORTING SERVICE
5-4-04 C

This space is for Court Use Only

| Account or other number by which creditor identifies debtor:  0004219515 | Check here if this claim | ❑ replaces  ☒ amends a previously filed claim, dated: November 1, 2002 |
|---|---|---|

**1. Basis for Claim**
❑ Goods sold
❑ Services performed
☒ Money loaned
❑ Personal injury/wrongful death
❑ Taxes
❑ Other _____

❑ Retiree benefits as defined in 11 U.S.C. § 1114(a)
❑ Wages, salaries, and compensation (Fill out below)

Your SS#: _____ - _____ - _____

Unpaid compensation for services performed

from _____ to _____
      (date)                    (date)

**2. Date debt was incurred: November 25, 1997**

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $106,533.17
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☒ Real Estate   ❑ Motor Vehicle
❑ Other _____

Value of Collateral:

Amount of arrearage and other charges at time case filed included in secured claim, if any $18,810.95

**6. Unsecured Priority Claim.**
❑ Check this box if you have an unsecured priority claim
Amount entitled to priority $ _____
Specify the priority of the claim:
❑ Wages, salaries, or commissions (up to $4,300),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3)
❑ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
❑ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
❑ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
❑ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
❑ Other - Specify applicable paragraph of 11 U.S.C. § 507(a-___).
*Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. CREDITS:**  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
**8. Supporting Documents:**  Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS.  If the documents are not available, explain.  If the documents are voluminous, attach a summary.
**9. Date-Stamped Copy:**  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This Space is for Court Use Only

000011

| Date  April 22, 2003 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):  John Teston |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Addendum "A"
In re Jacalyn S. Nosek
Bankruptcy Case No. 02-46025-JBR

As of the date of filing of the within bankruptcy case on October 2, 2002, there were arrearages due and owing as follows:

| | |
|---|---|
| 3 payments at $949.70 each<br>(October 1, 2001 through December 1, 2001) | $2,849.10 |
| 6 payments at $884.38 each<br>(January 1, 2002 through June 1, 2002) | $5,306.28 |
| 4 payments at $820.96 each<br>(July 1, 2002 through October 1, 2002) | $3,283.84 |
| 3 late charges at $28.49 each<br>(October 16, 2001 through December 16, 2001) | $85.47 |
| 6 late charges at $26.53 each<br>(January 16, 2002 through June 16, 2002) | $159.18 |
| 3 late charges at $24.63 each<br>(July 16, 2002 through September 16, 2002) | $73.89 |
| Previously Accrued Late Charges | $165.91 |
| Property Inspections | $193.50 |
| NSF Fees | $10.00 |
| Foreclosure Fees and Costs | $4,161.50 |
| Appraisal | $650.00 |
| Suspense Balance | <$1,067.72> |
| Prior Bankruptcy Attorney'sFees | $2,915.00 |
| Property Tax Advance | $25.00 |
| Total Arrears | $18,810.95 |
| Principal Balance | $87,722.22 |
| Total Debt | $106,533.17 |

# PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is at Buchalter, Nemer, Fields & Younger, A Professional Corporation, 895 Dove Street, Suite 400, P.O. Box 8129, Newport Beach, California 92658-8129.

On ___May 1, 2003___, I served the foregoing documents described as:

**PROOF OF CLAIM**

on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof in a sealed envelope as follows:

### ***SEE ATTACHED LIST***

[XX]  **BY MAIL**    I am a resident of, or employed in, the county where the mailing occurs; I am over the age of 18 years and am not a party to the cause.  I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service.  The correspondence will be deposited with the United States Postal Service this same day in the ordinary course of business.  The address(es) shown above is(are) the same as shown on the envelope.  The envelope was placed for deposit in the United States Postal Service at Buchalter, Nemer, Fields & Younger in Newport Beach, California on _May 1, 2003_.  The envelope was sealed and placed for collection and mailing with first-class prepaid postage on that date following ordinary business practices.  Service made pursuant to CCP § 1013a(3), upon motion of a party served, shall be presumed invalid if the postal cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing contained in the affidavit.

[XX]  **Federal**        I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

[ ]  **State**          I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed on __May 1, 2003__, at Newport Beach, California

**STACIE KELLEY** _____                  _____
                                                          (Signature)

000013

proof of service

Service List
In re **Jacalyn S. Nosek**
Case No.**02-46025-JBR**

**Debtor Attorney:**
Philip M. Stone
27-29 Mechanic St.
Worcester, MA  01608

**Chapter 13 Trustee:**
Denise M. Pappalardo
P. O. Box 16607
Worcester, MA  01601

000014

proof of service

Exhibit 4

FILING FEE PAID

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION**

IN RE:

Jacalyn S. Nosek

---

Ameriquest Mortgage Company

v.

Jacalyn S. Nosek

CHAPTER 13
CASE NO. 02-46025-JBR

---

## MOTION FOR RELIEF FROM STAY

To the Honorable Joel B. Rosenthal:

Ameriquest Mortgage Company, your moving party in the within Motion, respectfully represents:

1.    The movant, Ameriquest Mortgage Company, has a mailing address of 1100 Town & Country Road, Suite 200, Orange, CA 92868;

2.    The debtor, Jacalyn S. Nosek, has a mailing address of PO Box 1311, Lancaster, MA 01561.

3.    On October 2, 2002, the debtor filed a petition under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts.

4.    The movant is the holder of a first mortgage on real estate in the original amount of $90,000.00 given by Jacalyn S. Nosek to Ameriquest Mortgage Company on or about November 25, 1997. Said mortgage is recorded with the Worcester County Registry of Deeds in Book 19404, Page 164 and covers the premises located 60 Bolton Road, South Lancaster, MA 01561. A copy of the mortgage is annexed hereto and marked as Exhibit 'A'.

5.    Said mortgage secures a note given by Jacalyn S. Nosek to Ameriquest Mortgage Company in the original amount of $90,000.00.

6.    There is no other collateral securing the obligation.

7.    As of February 24, 2003, approximately $87,686.29 in principal, interest, late fees and other charges was due with regard to Ameriquest Mortgage Company's note and mortgage, exclusive of attorney's fees and

ENTERED ON DOCKET
2/26/03

costs.

8.      The other outstanding secured encumbrances on the subject property are listed below:

| Lien Holder | Lien Type | Amount of Lien |
|---|---|---|
| North American Capital Corp. | Execution | $5,419.92 |

9.      The total secured encumbrances on the property is $93,106.21.

10.     The pre-petition arrearage is approximately $19,789.14.

11.     According to the debtor's schedules, the fair market value of the subject property is $165,000.00. The liquidation value of the property, calculated at the debtor's representation of the fair market value less $5,100.00 in estimated foreclosure fees and costs, $875.00 in bankruptcy fees and costs, $710.00 in estimated eviction costs, $1,000.00 in property preservation costs, $750.00 in estimated REO closing fees and costs, and $9,900.00 in estimated real estate brokers commissions, $752.40 in real estate transfer taxes, is approximately $145,912.60. Notwithstanding the above, the Movant reserves the right to request access to the property for the purpose of conducting an interior appraisal to more accurately quantify its value, in the event that the value of said property is contested by the debtor.

12.     The debtor has equity in the property. However, the debtor has failed to make all of the required post-petition payments to Ameriquest Mortgage Company. The note is currently due for the December 1, 2002 through February 1, 2003, post petition payments.

13.     The total post-petition arrearage due as of February 24, 2003, is $5,619.07.

14.     The anticipated post-petition arrearage as of the date of the hearing on Ameriquest Mortgage Company's Motion for Relief is $7,276.53.

15.     The total post-petition attorney's fees relative to this Motion for Relief are $875.00. Other attorneys fees were incurred relative to opening the file, reviewing the Chapter 13 Plan, preparing and filing the Proof of Claim, filing a Request for Special Notice (Shannon A. Chlarson), and filing a Response to Debtor's Objection to Ameriquest's Proof of Claim.

16.     The monthly mortgage payment of $759.67 is due on the first of every month and late charges in the amount of $22.79 accrue on the sixteenth of every month.  The December mortgage payment was $820.96 and the December late payment was $24.63, pursuant to the terms of the Note and Mortgage.

17.     The property is not necessary for a successful reorganization of the debtor.

18.    The movant seeks relief from stay:

I.    Pursuant to 11 U.S.C. 362 (d)(1) for cause on the basis that the debtor has not made all of the required post petition payments, and that the debtor has failed to provide the plaintiff with adequate protection;

II.    Pursuant to 11 U.S.C. 362 (d)(2) on the basis that the debtor has no equity in the subject property and the property is not necessary for effective reorganization.


WHEREFORE, the movant prays that:

(i)    Ameriquest Mortgage Company and its successors and/or assigns, be granted relief from the automatic stay for the purpose of exercising its rights under its agreements with the debtors and under applicable law, including, without limitation, taking possession of the mortgaged premises and/or foreclosing or accepting a deed in lieu of foreclosure of its mortgage on said premises, and bringing such actions, including, without limitation, summary process proceedings, as are permissible by law;

(ii)    Waive the 10 day stay provided for in Rule 4001(a)(3) and allow relief to enter effective the date the Order is signed; and,

(ii)    Order such other and further relief as may be just and proper.


Respectfully submitted,
Ameriquest Mortgage Corporation
By its Attorney

Jennifer G. Haskell (651034)
ABLITT, CARUOLO & DE PASQUALE, LLP
333 North Avenue, 4th Floor
Wakefield, MA 01880
(781) 246-8995

DATE:  February 24, 2003

BOOK 19404 PAGE 164

When recorded, mail to:

134662

AMERIQUEST MORTGAGE COMPANY
P.O. BOX 11507
SANTA ANA, CA 92711

LOAN NO. 4219515-5610

BOL

97 DEC -3 AM 10:38

───────────── [Space Above This Line For Recording Data] ─────────────

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on      November     25 ,   1997          . The mortgagor is
JACALYN S NOSEK

("Borrower"). This Security Instrument is given to
AMERIQUEST MORTGAGE COMPANY

which is organized and existing under the laws of    the State of Delaware                                                     , and whose
address is     1100 TOWN & COUNTRY RD., STE. 200
ORANGE, CA ^2868                                          ("Lender"). Borrower owes Lender the principal sum of
Ninety Thousand and no/100------------------------------------------

                                                                        Dollars (U.S. $          90,000.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on     December  1 ,  2027            .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power
of sale, the following described property located in        WORCESTER                              County, Massachusetts:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of  60 BOLTON RD                                     SOUTH LANCASTER   [Street, City],
Massachusetts      01561                        [Zip Code]  ("Property Address");

MASSACHUSETTS-Single Family-FHMA/FHLMC
UNIFORM INSTRUMENT Form 3022 9/90
-6H(MA) (9403).01                    Amended 12/93
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 6        Initials:

1404 PAGE 169

notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

23. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

[X] Adjustable Rate Rider  [ ] Condominium Rider  [ ] 1-4 Family Rider
[ ] Graduated Payment Rider  [ ] Planned Unit Development Rider  [ ] Biweekly Payment Rider
[ ] Balloon Rider  [ ] Rate Improvement Rider  [ ] Second Home Rider
[ ] V.A. Rider  [ ] Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____ (Seal)
JACALYN S NOSEK  -Borrower

_____ (Seal)
-Borrower

_____ (Seal)  _____ (Seal)
-Borrower  -Borrower

COMMONWEALTH OF MASSACHUSETTS.  County ss:  Worcester

On this  25TH  day of  November , 1997 , before me personally appeared
Jacalyn S. Nosek
, to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

My Commission Expires:

9/24/2004

Notary Public
R. Kerry Cranston JR.

-8H(MA) (9608).01  Page 6 of 6  Form 3022  9/90
Loan No. 4219515-5610

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

IN RE:

Jacalyn S. Nosek

| | |
|---|---|
| Ameriquest Mortgage Company | CHAPTER 13 |
| v. | CASE NO. 02-46025-JBR |
| Jacalyn S. Nosek | |

**CERTIFICATE OF SERVICE**

I, do hereby certify that I have served a copy of the Motion for Relief From Stay, Proposed Order, and Notice of Appearance this 24th day of February, 2003, by first class mail, postage prepaid, upon the parties listed below.

Jennifer G. Haskell (651034)

Jacalyn S. Nosek
60 Bolton Road
South Lancaster, MA 01561

Steven A. Kressler
11 Pleasant Street
Worcester, MA  01609

Phillip M. Stone
44 Front Street
Worcester, MA  01608-1752

Denise M. Pappalardo
P.O. Box 16607
Worcester, MA  01601

Steven M. Carr
Special Assistant United States Attorney
10 Causeway Street, Room 401
Boston, MA 02222-1061

Barbara K. Hamilton
Becket & Lee LLP
P.O. Box 3001 Dept. V
Malvern, PA 19355-0701

# Registry of Deeds
## William Francis Galvin, Secretary of the Commonwealth
### Worcester - Anthony J. Vigliotti, Register

Home | Search | Index | Feedback | Contact

Registry Home  |  Select Another Registry  |  Registry of Deeds Search  |  Contact Us  |  Help  |  F.A.Q

← Back

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Result For:** | | | | | | **Result Matches:** [1 - 8 of 8] | |
| Name: | Nosek | Dates: 01/01/1966 To 11/28/2007 | | | | | |
| Role: Any | | Town: LANCASTER | | Document Type: Any | | | |

| | Name | File Date | Book/Page | Type Desc. | Town | # Pgs. | Number |
|---|---|---|---|---|---|---|---|
| ▶ | NOSEK JACALYN S | 11/20/2003 | 32276/247 | ORDER | LANCASTER | 1 | 305856 |
| ▶ | NOSEK JACALYN S | 04/18/2001 | 23858/263 | COMPLAINT | LANCASTER | 1 | 49560 |
| ▶ | NOSEK JACALYN S | 07/21/2000 | 22810/213 | DECLARATION | LANCASTER | 1 | 85715 |
| ▶ | NOSEK JACALYN S | 12/29/1997 | 19471/335 | CERTIFICATE | LANCASTER | 1 | 144541 |
| ▶ | NOSEK JACALYN S | 12/23/1997 | 19463/372 | DISCHARGE | LANCASTER | 1 | 143455 |
| ▶ | NOSEK JACALYN S | 12/03/1997 | 19404/164 | MORTGAGE | LANCASTER | 9 | 134662 |
| ▶ | NOSEK JACALYN S | 10/29/1996 | 18358/134 | MORTGAGE | LANCASTER | 10 | 119978 |
| ▶ | NOSEK JACALYN S | 04/22/1996 | 17841/383 | DEED | LANCASTER | 2 | 40807 |

For best results use Internet Explorer 5 and above or Netscape 6 and above.

Home | Search | Index | Feedback | Contact

©1996-2003 Secretary of the Commonwealth of Massachusetts. The documents provided in this web site are for informational purposes only. To obtain an official copy of any free document or publication, please contact the Secretary of the Commonwealth of Massachusetts, District Registry of Deeds.

## CERTIFICATE OF SERVICE

I, Philip M. Stone, do hereby certify on this day I electronically filed the foregoing pleading with the United States Bankruptcy Court for the District of Massachusetts using the CM/ECF System.  I served the foregoing document on the following CM/ECF participants:

Steven M. Ablitt, Esq.
Jeffrey K. Garfinkle, Esq.
Denise M. Pappalardo, Esq.
Carolyn A. Bankowski, Esq.
Phoebe Winder, Esq.
R. Bruce Allensworth, Esq.

*and all others receiving notice via the CM/ECF system*

I further certify that I have mailed this day by first-class mail, postage prepaid, a copy of the aforementioned pleading electronically filed with the Court on the following non-CM/ECF participants:

Jacalyn S. Nosek
60 Bolton Road
PO Box 1311
S. Lancaster, MA 01561

/s/ Philip M.  Stone
Philip M. Stone

DATED:        January 28, 2008