UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS – WESTERN DIVISION

| | |
|---|---|
| In re:<br><br>JACALYN S. NOSEK,<br>            Debtor. | Chapter 13<br><br>Case No.:    02-46025-JBR |
| JACALYN S. NOSEK<br>            Plaintiff<br><br>v.<br><br>AMERIQUEST MORTGAGE COMPANY, et al.,<br>            Defendants | <br><br>Adv. Pro. Nos.<br>04-4517 and<br>07-4109 |

## RESPONSE OF AMERIQUEST MORTGAGE COMPANY
## TO ORDER TO SHOW CAUSE

Defendant Ameriquest Mortgage Company ("Ameriquest"), through its counsel Goodwin Procter, LLP and Seder & Chandler, LLP, hereby responds to the Order to Show Cause issued on January 25, 2008 (Docket No. 80 in Adversary Proceeding No. 07-4109), as to why sanctions should not be imposed for alleged violations of Fed. R. Bankr. P. 9011 and 28 U.S.C. §1927, for allegedly misrepresenting, in affirmative statements and/or by omission, that Ameriquest was the holder of the Note and Mortgage (as hereinafter defined) on the residence of the Debtor, Jacalyn S. Nosek ("Debtor"). Ameriquest regrets that its filings in this case did not more clearly delineate Ameriquest's role as loan servicer and attorney in fact for Norwest Bank Minnesota, National Association, as Trustee of the AMRESCO Residential Securities Corporation Mortgage

Loan Trust 1998-2 (the "AMRESCO Trust") (in such capacity, as Trustee, "Norwest").[1] It would have been a simple matter for all of its pleadings and statements to have been styled to more expansively set forth its status. However, there was no violation of the rule or statute, and no sanctions are warranted against Ameriquest because the record in the Debtor's several Chapter 13 cases shows that Ameriquest was acting in its capacity as representative of Norwest as Trustee of the AMRESCO Trust; the Debtor and her counsel were fully aware that Ameriquest was acting in a representative capacity on behalf of Norwest as Trustee of the AMRESCO Trust and chose to deal with it in that capacity; and Ameriquest's pleadings were substantively proper and there was neither an intent to mislead the Court or the Debtor, nor any prejudice to the Debtor.

## STATEMENT OF FACTS

Ameriquest recognizes that this Court is familiar with this matter. Nonetheless, a brief recap of the record as it relates to Ameriquest's Response to the Order to Show Cause may be helpful and is provided below.

On or about November 25, 1997, the Debtor granted a mortgage on her principal residence (App. Ex. 1)[2] ("Mortgage") to Ameriquest to secure a promissory note in the original principal amount of $90,000, Loan No. 0004219515 (App. Ex. 2) ("Note"). The Note and Mortgage were subsequently assigned to "Norwest Bank Minnesota, N.A., as Trustee for AMRESCO Residential Securities Corporation Mortgage Loan Trust 1998-2, under the Pooling and Servicing Agreement dated as of 6/1/98," pursuant to Section 19 of the Mortgage which

---

[1] Norwest, now known as Wells Fargo Bank, N.A., holds legal record title to the Debtor's Note and Mortgage because the beneficial owner of the Note and Mortgage, the AMRESCO Trust, is a common law trust that holds its property not in its own name, but in the name of its trustee.

[2] All of the exhibits in support of Ameriquest's Response to the Court's Order to Show Cause are submitted herewith in an indexed appendix for the Court's convenience. References to the Appendix are styled "(App. Ex. ___)".

2

provided notice that the Note may be sold one or more times without prior notice to the borrower.[3] A copy of the Assignment of Mortgage to Norwest was recorded in the Worcester South Registry of Deeds on May 22, 2000 in Book 22605, at Page 162 (App. Ex. 3) ("Assignment"). Ameriquest continued to act as loan servicer for the Debtor's Mortgage loan.

On March 30, 2005 Ameriquest transferred its loan servicing, including the Debtor's loan, to AMC Mortgage Services ("AMC") (App. Ex. 4). As of September 30, 2007, AMC assigned its servicing rights to Citi Residential Lending, Inc. ("CitiRL"). Neither Ameriquest nor AMC is currently in the business of servicing residential mortgage loans. The claim filed by Ameriquest has been formally transferred on the Court's docket to CitiRL, as servicer.[4]

Pursuant to the Pooling and Servicing Agreement ("Servicing Agreement") (App. Ex. 6), the relevant portions of which are appended as Exhibit A to the accompanying Declaration of Eileen Driscoll Rubens in Support of Response of Ameriquest Mortgage Company to Order to Show Cause ("Rubens Supp. Decl."), Ameriquest agreed to service certain mortgage loans which constituted assets legally owned by Norwest as Trustee of the AMRESCO Trust and was required to realize upon defaulted mortgage loans, including the Debtor's Mortgage loan beneficially owned by the AMRESCO Trust, by taking appropriate actions on behalf of Norwest as Trustee of the AMRESCO Trust to foreclose the Mortgage. See Section 8.13(a). In servicing such mortgage loans, Section 8.01(e) of the Servicing Agreement provides that Ameriquest "in its own name…is hereby authorized and empowered and this subsection shall constitute a power of attorney to carry out its servicing and administrative duties on behalf of itself, the Owners and

---

[3] Section 19 of the Mortgage and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.,* require timely notice be given to the borrower of any change in the loan servicer, which Ameriquest did.

[4] The Transfer of Claim Other Than for Security, dated January 28, 2008 (Docket No.176) (App. Ex. 5) names the transferee of the claim as "Citi Residential Lending, Inc., as a loan servicer for the secured creditor Wells Fargo Bank Minnesota, N.A. successor by merger to Norwest Bank Minnesota, N.A., as Trustee of AMRESCO Residential Securities Corporation Mortgage Loan Trust 1998-2 under the Pooling and Servicing Agreement dated June 1, 1998, without recourse."

3

the Trust . . . ." The duties so authorized include institution of foreclosure proceedings and the like to effect ownership of properties underlying the mortgages it serviced. The duties also include collecting all payments and responding to inquiries of mortgagors. See Section 8.01(b). Accordingly, as authorized by the Servicing Agreement, Ameriquest filed a proof of claim in its own name in the Debtor's Chapter 13 bankruptcy case and stated in certain letters that it held the Debtor's Note and Mortgage.

While in retrospect, its specific representative capacity should have been described in its Court filings, Ameriquest's acting in its own name was perfectly appropriate behavior based upon its contractual relationship with Norwest as Trustee of the AMRESCO Trust. However, as explained in detail below, the Debtor and her counsel knew that Ameriquest was acting as representative of Norwest as Trustee of the AMRESCO Trust, and never questioned its right to act in that capacity. Recent assertions by Debtor's counsel that he or his client were somehow misled about the capacity in which Ameriquest was acting are not credible. As an obvious counterpoint to the Debtor's recent dissimulations, the Court need look no further than the Schedules that were filed on November 1, 2002 (Docket No. 8 in Case No. 02-46025) (App. Ex. 7), listing as a secured party holding a Mortgage on Debtor's property: "Norwest Bank Minnesota NA Tr" and, beneath that entry, "Ameriquest Mortgage Company Representing: Norwest Bank Minnesota NA Tr. #0004219515."

The Debtor filed an Adversary Proceeding in December, 2004 (Adv. Pro. No. 04-04517) (App. Ex. 8), complaining of actions by Ameriquest in its role as loan servicer, specifically Ameriquest's alleged failure to provide an accurate loan history and to distinguish in the loan history that it did provide between payment of prepetition arrears and receipt of postpetition loan payments, and Ameriquest's alleged failure to respond to a qualified written request ("QWR"),

4

within the time frames contained in RESPA. Subsequently, the Debtor filed a second Adversary Proceeding in July, 2007 (Adv. Pro. No. 07-04109) seeking to attach certain funds in order to collect upon a judgment in the 2004 adversary proceeding which remains on appeal to the First Circuit.

In opposition to the Debtor's attachment motion, Ameriquest submitted the Declaration of Eileen Driscoll Rubens, dated September 27, 2007 ("Rubens Decl.") (App. Ex. 9), attesting to the sale of loans in general, and specifically to the sale of the Debtor's loan to Norwest as Trustee of the AMRESCO Trust and to Ameriquest's prior servicing role. At a hearing the next day, Debtor's counsel stated, "this is the first time that the purported owner has been identified publicly and in this Court, and there is no public record to confirm that." Sept. 28, 2007 Tr. (App. Ex. 10) at 7:11-13. Each and every part of that statement was false, as the record holder of the Note and Mortgage, Norwest, as Trustee of the AMRESCO Trust, had previously been identified in public filings in Massachusetts Land Court, in published notices, and in a Motion for Relief from Stay filed in this Court, and the Assignment of Mortgage from Ameriquest to Norwest as Trustee of the AMRESCO Trust had been on record in the Worcester County Registry of Deeds for more than seven years, since well before the inception of the Debtor's first chapter 13 case. Debtor's counsel repeated his untrue statements two months later at another hearing, despite ample time in the interim to investigate and verify his claims.

At a hearing on November 28, 2007, Debtor's counsel told the Court that the September 27, 2007 Rubens Declaration "was the first time that Ameriquest had disclosed, in fact, that they were acting as the agent, and they were not the holder of the Mortgage," Nov. 28, 2007 Tr. (App. Ex. 11) at 3-4. These statements by Debtor's counsel immediately preceded the Court's determination to consider issuance of the Order to Show Cause. See Nov. 28, 2007 Tr. at 17. In

5

leading the Court to believe that sale of the Debtor's Note and Mortgage, the identity of the owner and record holder, and the fact that Ameriquest was acting as representative of Norwest as Trustee of the AMRESCO Trust had been concealed from the Debtor, Debtor's counsel did a grave disservice to the Court and caused undue burden to all parties required to respond to the instant Order to Show Cause.

The identity of Norwest as Trustee of the AMRESCO Trust and the AMRESCO Trust's ownership of the Debtor's Note and Mortgage, pursuant to the Assignment from Ameriquest, has been a matter of public record since recording of the Assignment in the Worcester South Registry of Deeds on May 22, 2000 (App. Ex. 3), and was expressly set forth in the foreclosure Complaint filed by Norwest as Trustee in Massachusetts Land Court in April, 2001 (App. Ex. 12), in Notices of Intent to Foreclose addressed to the Debtor (App. Ex. 13), in repeated correspondence to the Debtor (*see, e.g.,* App. Ex. 14), and in a Motion for Relief from Stay filed by Norwest as Trustee in this Court in the Debtor's prior bankruptcy case (App. Ex. 15).

On April 18, 2001, a notice of filing of a Complaint in the Massachusetts Land Court (Case No. 270739) for authority to foreclose the Debtor's Mortgage was recorded in the Worcester South Registry of Deeds on behalf of "Norwest Bank Minnesota, N.A., as Trustee for AMRESCO Residential Securities Corporation Mortgage Loan Trust, 1998-2, under the Pooling and Servicing Agreement dated as of June 1, 1998." (App. Ex. 12). Additionally, the Complaint, which was addressed to and served on the Debtor, leading to the Debtor's first bankruptcy filing in May, 2001 (Case No. 01-43293), stated that Norwest as Trustee was "claiming to be the holder of the Mortgage . . . which was given by Jacalyn S. Nosek to Ameriquest Mortgage Company . . . and now held by the plaintiff by assignment." Id. Norwest furnished written notice to the Debtor and published a legal notice of foreclosure dated May 8,

6

2001 identifying Norwest as the "present holder of said Mortgage" and its attorneys as Ablitt, Caruolo & DePasquale, LLP, the same firm that has represented Ameriquest in this case (App. Ex. 16).

The Debtor filed a second chapter 13 petition in February, 2002 (No. 02-41217). A Notice of Appearance for Norwest as Trustee was filed by Steven A. Ablitt of Ablitt & Caruolo on May 28, 2002. (Docket No. 02-41217, No. 15) (App. Ex. 17). Additionally, Norwest moved for relief from stay, asserting that Norwest was the "holder of a first Mortgage on real estate" of the Debtor (Docket No. 02-41217, No. 16) (App. Ex. 15). In the Debtor's Opposition to Norwest's Motion for Relief from Stay, filed on June 6, 2002, the Debtor admitted that Norwest was the record holder of her Mortgage. (Docket No. 02-41217, No. 20) (App. Ex. 18). The Debtor's case was dismissed on the Chapter 13 Trustee's motion.

On October 2, 2002, the Debtor filed her third chapter 13 bankruptcy case (No. 02-46025). The amended Matrix (Docket No. 11) (App. Ex. 19) and the Certificates of Service of the Notice of Chapter 13 Case (Docket No. 12) (App. Ex. 20) and Plan (Docket No. 10) (App. Ex. 21) include both Ameriquest and Norwest. As noted above, the Debtor's schedules, signed under penalty of perjury by the Debtor on November 1, 2002, list "Norwest Bank Minnesota, NA Tr" as a secured creditor holding a Mortgage on the Debtor's property. Docket No. 02-46025, No. 8 (App. Ex. 7). Beneath that entry, the Debtor listed "Ameriquest Mortgage Company Representing: Norwest Bank Minnesota, NA Tr. #0004219515" and "Buchalter, Nemer, Fields et al., Representing: Norwest Bank Minnesota, NA Tr." (App. Ex. 7, Sch. D). Thus, the Debtor knew in November, 2002 precisely what Debtor's counsel (who had filed the case on behalf of the Debtor and who moved to add Ameriquest to the Substitute Matrix in November, 2002) denied knowing five years later in November, 2007: that Ameriquest in servicing the Debtor's

7

Mortgage loan was acting in a representative capacity for the record holder, Norwest, as Trustee of the AMRESCO Trust.

The Debtor's Statement of Financial Affairs, also signed by the Debtor on November 1, 2002, similarly discloses the Land Court Complaint filed against the Debtor by Norwest Bank Minnesota, N.A., as Trustee. Docket No. 02-46025, No. 9 (App. Ex. 22). Despite this extensive history of loan enforcement in the name of Norwest as Trustee, Debtor's counsel represented to the Court that Norwest's identity was unknown to the Debtor and her counsel. The record is clear that the Debtor and her counsel knew that Ameriquest was acting in a representative capacity, that they never raised an objection to its acting in that capacity, and that they chose to deal with it in that capacity (even to the point of suing it for its acts and omissions in that capacity) with full knowledge that Ameriquest was acting at all times on behalf of Norwest as Trustee of the AMRESCO Trust. When viewed against this backdrop, it is not surprising that Ameriquest did not amplify its characterization in the absence of any objection by a fully-cognizant Debtor and in the context of Schedules that provided all parties with a full and correct description of Ameriquest's representative role. Acting in its own name and denominating itself as the holder of the Note and Mortgage simply became the vernacular of the case.

Ameriquest filed a Proof of Claim [Claim #1] and then an amended Proof of Claim dated April 22, 2003 [Claim #16] (together, "Proof of Claim") (App. Ex. 23) in its own name and, on February 26, 2003, filed a Motion for Relief from Stay, Docket No. 02-46025, No. 29, as authorized under Article VIII of the Servicing Agreement. In the Motion for Relief from Stay, Ameriquest stated, "The movant is the holder of a first Mortgage" on the Debtor's property. Docket No. 29, ¶4 (App. Ex. 24). Under the Servicing Agreement, Ameriquest was authorized to seek such relief incident to foreclosure in its own name, however, the Motion on its face

8

admittedly did not clearly delineate the source of Ameriquest's authority. On March 5, 2003, the Debtor filed an Opposition, Docket No. 31 (App. Ex. 25), but did not raise an objection to or take issue with Ameriquest's description of its relationship to the Debtor's Mortgage loan, despite having previously been served with a Land Court foreclosure Complaint, a Motion for Relief from Stay and other notices and correspondence during 2001 and 2002 in the name of Norwest Bank Minnesota, NA, as Trustee of the AMRESCO Trust.

Moreover, in the course of the 2004 Adversary Proceeding, Debtor's counsel on May 4, 2005 conducted the deposition of Ameriquest employee Judy Johnston and inquired concerning an exhibit providing an "investor number" for the owner of Ms. Nosek's Mortgage loan:

> Q: This document has an investor number. What does that refer to?
>
> A: It's – our loans are in pools, because we don't own the loans. So whoever that investor number is, it would be in the pool of loans that was sold to the investor. Could be a pool of investors that buy it.
>
> Q: So who would have the index that would reference the investor number to the name of the investor?
>
> A: Jeff Rivas could get that.

Deposition Transcript of Judy Rene Johnston, dated May 4, 2005, at 149:18 to 150:4 (App. Ex. 26).

Ms. Johnston's deposition was taken by Attorney Philip Stone, the same Mr. Stone who inexplicably later represented to this Court that Eileen Ruben's September 27, 2007 Declaration was the first notice to Debtor and Debtor's counsel that Ameriquest was servicing the Debtor's loan and was not the holder and owner of the Debtor's Note and Mortgage.

Following the deposition, the investor number was matched to Wells Fargo, successor by merger to Norwest, as Trustee, and Debtor's counsel was furnished this information as revealed on the first page of Exhibit 15 to the Memorandum in Support of Debtor's Motion for Partial

9

Summary Judgment in Adv. Pro. No. 04-04517, filed on September 13, 2005: "The investor on the loan. The investor # is 789/001. Wells Fargo." Lenstar Notes (App. Ex. 27). This is not a case where the identity of the mortgagee parties is unknown; it is only a case of an intermittently incomplete description of the capacity of the mortgagee party acting to enforce the Debtor's obligations, Ameriquest. The Debtor's feigned surprise would be an irrelevancy had it not misled the Court into thinking that Ameriquest was making statements that lacked evidentiary support or that violated local rules.[5] It is the Debtor and/or Debtor's counsel who has caused the Respondents to incur excess costs, in violation of 28 U.S.C. § 1927, by seeking to manufacture a spurious issue where none existed. The Debtor made a fully informed decision to name Ameriquest and not Norwest as a defendant in the Debtor's 2004 Adversary Proceeding complaining of Ameriquest's loan servicing actions; for the Debtor to incite this Rule 9011 inquiry for the purpose of camouflaging her decision is wholly unwarranted.

## ARGUMENT

Federal Rule of Bankruptcy Procedure 9011(b) provides that attorneys or unrepresented parties who sign, file, submit or later advocate in pleadings, written motions or other papers to the court are:

> Certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -- . . . (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Bankr. P. 9011(b)(3). Given that Fed. R. Bankr. P. 9011 is derived from Fed. R. Civ. P. 11, "the First Circuit has explained that "Rule 11 jurisprudence is largely transferable to

---

[5] The Order to Show Cause notes that failure to identify Norwest as holder and Ameriquest as its representative violate MLBR 4001-1(b)(2)(F). However, this rule had not been adopted at the time of the February 24, 2003 Motion for Relief From Stay noted by the Court and there was no comparable rule in effect at the time.

10

Rule 9011 cases.'" *In re CK Liquidation Corp.*, 321 B.R. 355 (1st Cir. B.A.P. 2005), *citing in re D.C. Sullivan Co.* 843 F.2d 596, 598 (1st Cir. 1988). Whether a violation of Rule 9011(b) has been shown to have occurred is subject to an objective standard of whether "an inquiry reasonable under the circumstances," *Fed. R. Bankr. P. 9011(b),* was undertaken prior to the filing of a pleading, written motion or other paper signed by an attorney or represented party. 326 B.R. at 38, *citing Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533 (1991). Sanctions under Rule 9011 should be imposed only for serious misconduct and any doubt should be resolved in favor of the party against whom the sanctions are to be assessed. See 11 MOORE'S FEDERAL PRACTICE §11.11[4] & [5]. The Court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the offending conduct. *See* Advisory Committee Notes to Rule 11, 1993 Amendments.

Explicit provision is made in the Rule for litigants to be provided notice of the alleged violation and opportunity to respond before sanctions are imposed. When served with a motion for Rule 9011 sanctions, a party has a 21 day "safe harbor" to cure the violation by withdrawing or correcting the challenged contention without penalty. If Debtor's counsel had at any point in these proceedings over the past five years challenged Ameriquest's characterization of itself as holder of the Debtor's Mortgage, Ameriquest would have had the opportunity to clarify that statement and to delineate that it was acting in its own name pursuant to power of attorney conferred on it by Norwest, as Trustee of the AMRESCO Trust, under the Servicing Agreement.

The Court also possesses the power under the Rule to act on its own initiative by issuance of a show cause order, as was done here. The Advisory Committee Notes explain why there is no corresponding "safe harbor" when the Court issues a show cause order:

11

> Since show cause orders will ordinarily be issued only in situations that are akin to contempt of court, the rule does not provide a 'safe harbor' to a litigant for withdrawing a claim, defense, etc., after a show cause order has been issued on the court's own initiative. Such corrective action, however, should be taken into account in deciding what - if any – sanction to impose if, after consideration of the litigant's response, the court concludes that a violation has occurred.

Advisory Committee Notes to Rule 11, 1993 Amendments. In this case, any incomplete description or inaccurate characterization of Ameriquest's role as loan servicer and attorney in fact for the holder of the Debtor's Note and Mortgage, Norwest as Trustee of the AMRESCO Trust, was corrected or clarified on the record by the September 27, 2007 Declaration of Eileen Driscoll Rubens in advance of issuance of the Court's January 25, 2008 Order to Show Cause. There is no conduct "akin to contempt of court" and no reason for the Court to sanction Ameriquest under Fed. R. Bankr. P. 9011.

**I.     Ameriquest's Pleadings Were Substantively Proper.**

As this Court has recognized, "[t]he purpose of Rule 9011 is to deter baseless filings in bankruptcy and thus avoid the expenditure of unnecessary resources by imposing sanctions on those found to have violated it." *In re M.A.S. Realty Corp.,* 326 B.R. 31, 37 (Bankr. D. Mass. 2005), *citing In re Deville,* 280 B.R. 483, 492 (9th Cir. B.A.P. 2002), and *In re Kilgore*, 253 B.R. 179, 192 (Bankr. D.S.C. 2000). The pleadings filed by Ameriquest in the Debtor's bankruptcy case and referenced in the Order to Show Cause, specifically the Proof of Claim and Motion For Relief from Stay, are not the type of baseless filing Rule 9011 is meant to deter. Ameriquest had the authority pursuant to Section 8.01(e) of the Servicing Agreement to file the Proof of Claim in its own name. Further, the power of attorney granted to Ameriquest by Norwest, as Trustee of the AMRESCO Trust, and Section 8.13 of the Servicing Agreement authorized Ameriquest to file the Motion for Relief from Stay to foreclose upon the Mortgage

12

securing the Debtor's Note. Although Ameriquest should have more clearly delineated its role as servicer to Norwest as Trustee of the AMRESCO Trust, Ameriquest's omission of a more complete description of its servicing relationship to Norwest as Trustee of the AMRESCO Trust does not equate to a violation of Rule 9011 or conduct worthy of sanctions.

Ameriquest is mindful of this Court's admonition that in the context of seeking relief from stay "[l]enders must take care in their haste to obtain relief from stay to ensure that factual statements they make in their motions are true, have evidentiary support and support their claims." *In re Maisel*, 378 B.R. 19, 22 (Bankr. D. Mass. 2007). In *In re Maisel*, Wells Fargo Bank, National Association ("Wells Fargo") stated in its motion for relief from stay to foreclose on the debtors' mortgage that it was the current holder of the note and mortgage, although the note and mortgage attached as exhibits to the motion were in favor of Option One Mortgage Corporation ("Option One"). *Id.* at 20. At a hearing on the motion for relief from stay, the Court called upon Wells Fargo to establish its standing to have brought the motion, in response to which Wells Fargo proffered an assignment of mortgage from Option One to Wells Fargo dated four days subsequent to the filing of the motion for relief from stay. *Id.* Although the Court ultimately granted Wells Fargo's motion as the debtors had indicated their intent to surrender the property, the Court noted that Wells Fargo "was an unrelated third party that had no interest in the mortgage or note until after the motion for relief was filed" and thus did not have standing to seek relief from stay. *Id.* at 22.

Ameriquest regrets that a description of its capacity as loan servicer, in addition to loan originator, was lacking in its Proof of Claim and Motion for Relief from Stay. Nonetheless, *In re Maisel* is inapposite given that at the time Ameriquest made such filings in the Debtor's case it had a colorable claim to the Debtor's property pursuant to the authorization and power of

13

attorney contained in the Servicing Agreement to act in its own name on behalf of Norwest as Trustee of the AMRESCO Trust and as such its filings in this case were authorized and proper, albeit incomplete in their description of Ameriquest's representative capacity.

The United States Bankruptcy Court for the District of South Carolina in *In re Woodberry*, 2008 Bankr. D. Lexis 240 (Bankr. D.S.C. 2008), recently distinguished this Court's statements in *In re Maisel* on facts substantially similar to those currently before this Court in regards to the Order to Show Cause. In *In re Woodberry*, a loan servicer, acting on authority vested in it by an agreement similar to the Servicing Agreement in the instant matter, moved in its own name for relief from the automatic stay on behalf of the trustee of an investment loan trust to foreclose upon the debtor's mortgage. *Id.* at *2 through *5. The debtor argued in reliance upon *In re Maisel*, that the loan servicer did not have standing to pursue the motion for relief from stay because it did not hold the Debtor's note and mortgage nor possess a valid assignment of the mortgage at the time the motion was brought to confer standing on the loan servicer as a party in interest. *Id* at *9 - *10.

In determining whether the loan servicer had standing to bring the motion for relief from stay, the court noted that (i) contested matters such as a motion for relief from stay must be prosecuted in the name of the "real party in interest" pursuant to Fed. R. Civ. P. 17(a), adopted by Fed. R. Bankr. P. 7017, *Id.* at *12; and (ii) when determining whether a loan servicer is a "party in interest" and a "real party in interest," "the general rule is that a mortgage servicer has standing by virtue of its pecuniary interest in collecting payments under the terms of the note and mortgage." *Id.* at *14, *citing In re Tainan*, 48 B.R. 250, 252 (Bankr. E.D. Pa. 1985) (mortgage servicer a party in interest for purposes of Fed. R. Civ. P. 17(a) in a relief from stay proceeding); *Bankers Trust (Delaware) v. 236 Beltway Inv.*, 865 F. Supp. 1186, 1191 (E.D. Va. 1994)(Both

14

lender and servicer have standing to foreclose even if servicer is not the holder of the mortgage); *In re O'Dell,* 268 B.R. 607, 618 (N.D. Ala. 2001)(A servicer was allowed to defend a proof of claim on behalf of its principal), *aff'd*, 305 F.3d 1297, 1302 (11th Cir. 2002)("A servicer is a party in interest in proceedings involving loans which it services."); *In re Miller*, 320 B.R. 203, 206 fn2. (Bankr. N.D. Ala. 2005)(Servicer permitted to litigate motion for relief from stay).

In holding that the loan servicer had standing to pursue the motion for relief from stay in its own name on behalf of its principal, the court stated "[i]t seems the better view that a loan servicer, with a contractual duty to collect payments and foreclose mortgages in the event of default, has standing to move for relief from stay in the Bankruptcy Court." *Id.* at 14. Accordingly, given the similarity of the facts between this case and *In re Woodberry*, and the distinguishable facts of *In re Maisel*, Ameriquest's actions were not only reasonable under the circumstances but comport with the generally accepted view that irrespective of the identity of the owner and holder of a note and mortgage, a loan servicer that is contractually authorized to foreclose upon a delinquent mortgage loan and otherwise pursue post-default rights and remedies including relief from the automatic stay, may do so in its own name.

II. **Ameriquest's Pleadings Were Not Filed with an Intent to Mislead or Conceal.**

As described above, Norwest, as Trustee of the AMRESCO Trust, and Ameriquest had a contractual relationship whereby Ameriquest was authorized to take action in its own name with respect to the Debtor's Note and Mortgage on behalf of Norwest, as Trustee of the AMRESCO Trust. Although Ameriquest regrettably provided a sometimes incomplete description of its relationship to the Debtor's Mortgage, at no time did Ameriquest intentionally conceal or mislead the Debtor and her counsel with respect to Ameriquest's role as servicer and the record establishes that the Debtor and her counsel were aware that Norwest, as Trustee of the

15

AMRESCO Trust, was the record holder of the Debtor's Note and Mortgage, and of Ameriquest's role as loan servicer.

Multiple references in the public record in the Massachusetts Land Court, in the Worcester County Registry of Deeds, and in pleadings filed in bankruptcy proceedings before this Court to which the Debtor is a party, leave no doubt that Debtor and her counsel were aware that Norwest, as Trustee of the AMRESCO Trust, was the owner and holder of Debtor's Note and Mortgage. Documents disclosing that Norwest, as Trustee of the AMRESCO Trust, was the record holder of the Debtor's Note and Mortgage include, but are not limited to: (i) recording of the Assignment of Debtor's Mortgage from Ameriquest to Norwest as Trustee of the AMRESCO Trust in the Worcester County Registry of Deeds, (ii) filing of the foreclosure Complaint in Massachusetts Land Court by Norwest as Trustee of the AMRESCO Trust, (iii) addressing of Notices of Intent to Foreclose and correspondence to the Debtor by Norwest through counsel, and (iv) filing of a Notice of Appearance and Motion for Relief from Stay with respect to the Debtor's Mortgage and Note by Norwest as Trustee in the Debtor's second Chapter 13 case.

Furthermore, filings made by Debtor and her counsel in this, her third Chapter 13 bankruptcy case, prove that the Debtor and her counsel knew and understood that Norwest, as Trustee of the AMRESCO Trust, was the owner and holder of the Debtor's Note and Mortgage, and that Ameriquest was the loan servicer, and include, but are not limited to, the Amended Matrix, the Debtor's Schedules, the Debtor's Statement of Financial Affairs, and Certificates of Service filed by Debtor's counsel reflecting service on both Ameriquest and Norwest. Additionally, the Debtor's counsel was unequivocally informed by the May, 2005 deposition testimony of Ameriquest employee Judy Johnston in the 2004 Adversary Proceeding that Ameriquest did not own the loans it serviced, including the Debtor's loan.

16

Accordingly, there were multiple disclosures of Norwest, the AMRESCO Trust and Ameriquest's relationship with regard to the Debtor's Mortgage loan on the record throughout the Debtor's multiple bankruptcy proceedings in this Court and elsewhere in the public record. Despite all of this, Debtor's counsel represented to this Court that the Declaration filed by Eileen Driscoll Rubens on September 27, 2007 was the "first time that Ameriquest had disclosed, in fact, that they were acting as the agent, and they were not the holder of the Mortgage." The record with this Court reflects that it was impossible for either the Debtor or her counsel to not have received prior notice that Norwest, as Trustee of the AMRESCO Trust, held the Debtor's Note and Mortgage, and directly contradicts any insinuation that Ameriquest attempted to intentionally mislead or conceal from the Debtor that Norwest, as Trustee of the AMRESCO Trust, owned the Note and Mortgage, or that the Debtor or her counsel were so misled.

### III. The Incomplete Description of Ameriquest's Loan Servicing Role and Capacity to Act in These Proceedings Has Not Caused Any Prejudice to the Debtor.

Admittedly, Ameriquest's proof of claim and Motion for Relief from Stay should have done more to describe its representative capacity. However, the Debtor's Chapter 13 case would have proceeded no differently had relief from stay been sought in the name of Norwest as Trustee of the AMRESCO Trust, as it was in the Debtor's prior bankruptcy case, or if Ameriquest had more clearly and completely described its capacity as loan servicer and attorney in fact for the record holder, Norwest as Trustee of the AMRESCO Trust. Moreover, Ameriquest was entitled under the Servicing Agreement to act in its own name to seek to foreclose on the Debtor's Mortgage, and as loan servicer had standing to prosecute the claim and stay relief motion. Accordingly, the Debtor was not prejudiced by Ameriquest's failure to accurately and completely describe its representative capacity and the source of its authority to act in these bankruptcy proceedings.

17

In addition, the focus of the Debtor's 2004 Adversary Proceeding was an alleged RESPA violation arising from Ameriquest's statutorily-mandated response to the Debtor's QWR under 12 U.S.C. §2605(e). RESPA by its terms applies to loan servicers qua servicers, and the Debtor's Motion for Partial Summary Judgment and the parties' September 19, 2005 Joint Pre-Trial Memorandum focused on Ameriquest's actions as "servicer." See Joint Pre-Trial Memorandum at J-"Plaintiff's Case" (App. Ex. 28), as did the evidence at trial.

Ameriquest has defended its actions as loan servicer in these proceedings, but has never denied responsibility for its servicing of the Debtor's loan during the period at issue in the 2004 Adversary Proceeding. If liability is upheld on appeal, Ameriquest is the responsible party.

Thus, there has been no prejudice to the Debtor due to Ameriquest's failure to specify its capacity as loan servicer for the holder of the Note and Mortgage, Norwest as Trustee.

## IV.   No Sanctions Against Ameriquest Are Warranted Upon the Facts Before the Court.

Ameriquest regrets that the Court has had to devote time to an issue that need never have arisen, if Ameriquest's claim and pleadings had included appropriate language denoting its representative capacity on behalf of Norwest as Trustee of the AMRESCO Trust. However, that lack of clarity does not rise to the level of a Rule 9011 violation.[6] Even if the Court were to find a violation of Rule 9011, moreover, Ameriquest's conduct is not deserving of any sanction. Rule 9011 does not attempt to enumerate the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate, however, the Advisory Committee Notes do provide a non-exhaustive list. Some of the pertinent factors include whether the violation was willful, or negligent; whether it infected the entire pleading; whether it was intended to injure; what effect it had on the litigation process in time or expense; and whether the

---

[6]   28 U.S.C. § 1927 applies to any attorney or other person admitted to conduct cases in any court of the United States, and does not apply to a corporate party such as Ameriquest.

18

responsible person is trained in the law. Advisory Committee Notes to Rule 11, 1993 Amendments.

There is no evidence to establish that Ameriquest willfully misrepresented its capacity in relation to the Debtor's loan, or that it had the intent to injure or mislead. There was no reason for Ameriquest to conceal the identity of the holder, Norwest as Trustee, when it was already a matter of public record and had previously been repeatedly disclosed to the Debtor.

Moreover, as explained above, Ameriquest's filing of a proof of claim and motion for relief from stay in its own name was authorized under the Servicing Agreement and was proper. Ameriquest's failure to denote its representative capacity did nothing to increase the time or expense of either the Debtor's bankruptcy case or the Adversary Proceeding.

There is no indication that John Teston, the signatory to Ameriquest's proof of claim, is trained in the law. The proof of claim attached the Note and Mortgage and did not attach the Assignment, however, Ameriquest has been unable to determine if Mr. Teston knew of or possessed a copy of the Assignment. Mr. Teston resigned his employment with Ameriquest on November 17, 2005. Rubens Supp. Decl., ¶9. Ameriquest, through its counsel, attempted to notify Mr. Teston of the Court's Order to Show Cause, *see*, Ruben Supp. Decl. ¶10 and Exhibit B (App. Ex. 29), however, Mr. Teston no longer resides at the last known address Ameriquest has for him, and his whereabouts are unknown.

In mitigation of the mistake made in describing Ameriquest as the holder of Debtor's Note and Mortgage, Ameriquest notes that it originated Ms. Nosek's loan, so that the Note and Mortgage on their face name Ameriquest, making the error more understandable than if Ameriquest had never itself held the Note and Mortgage and had been only a loan servicer.

Finally, the purpose of Rule 9011 sanctions is to deter repetition of the same offending

19

behavior by the responsible party in the future. Since Ameriquest is no longer in the business of servicing residential mortgage loans, Rubens Decl. ¶5 and Supp. Rubens Decl. ¶4, no deterrent purpose exists to sanction Ameriquest for representing itself as the holder rather than only as a servicer of the Debtor's mortgage loan, since the conduct is not capable of repetition.

Especially where Ameriquest was not afforded a safe harbor period to correct its filings, as it would gladly have done if the Debtor had at any time so requested, whether by motion under Rule 9011 or otherwise, Ameriquest should not be sanctioned for its innocent mistake.

## CONCLUSION

For all of the foregoing reasons, Ameriquest respectfully requests that the Court decline to find a violation of Fed. R. Bankr. P. 9011 and not impose any sanctions on Ameriquest.

Respectfully submitted,

AMERIQUEST MORTGAGE COMPANY

By its attorneys,

/s/ Daniel M. Glosband
Daniel M. Glosband (BBO 195620)
Richard A. Oetheimer (BBO 377665)
Olsson, Jonathan P.(BBO 660521)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax:  617.523.1231


J. Robert Seder (BBO 450260)
SEDER & CHANDLER, LLP
339 Main Street
Worcester, MA  01608
Tel.:  508-757-7721
Fax:  508-798-1863

Dated:    February 15, 2008