**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re<br><br>**JACALYN S. NOSEK**<br><br>Debtor | ) ) ) ) ) ) ) ) ) **Chapter 13**<br>**Case No. 02-46025-JBR** |
| **JACALYN S. NOSEK**<br><br>Plaintiff<br><br>v.<br><br>**AMERIQUEST MORTGAGE COMPANY,**<br>et al.<br><br>**Defendants** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) **Adversary Proceeding**<br>**No. 04-4517 and**<br>**No. 07-4109** |

**RESPONSE OF BUCHALTER NEMER, P.C. AND JEFFREY K. GARFINKLE
TO ORDER TO SHOW CAUSE DATED JANUARY 25, 2008**

TO THE HONORABLE JOEL B. ROSENTHAL:

Buchalter Nemer, P.C. (the "Firm") and Jeffrey K. Garfinkle ("Mr. Garfinkle" and together with the Firm the "Buchalter Respondents"), in response to the *Order to Show Cause* issued by the Court on January 25, 2008, join in the *Response of Ameriquest Mortgage Company to Order to Show Cause* .

As to the Buchalter Respondents, no contempt or sanctions should be issued for the following reasons:

- While the Firm accepts responsibility for the incompletely describing Ameriquest's capacity in the two proofs of claim it prepared on behalf of Ameriquest, Ameriquest had the contractual and legal right to file proofs of claim

BN 1734978v1

on behalf of third party owners of mortgage, such as Norwest as Trustee for the AMERSCO Trust.

- Each and every pleading filed by the Buchalter Respondents after the filing of the two proofs of claim accurately stated the facts and law as were relevant to the matter then pending before this Court.

- None of the pleadings filed by the Buchalter Respondents were submitted for an improper purpose.

- The Buchalter Respondents never intended to mislead the Court, the Debtor or Debtor's counsel about Ameriquest's role and capacity in this case. As established by the Bankruptcy Schedules filed by the Debtor and her counsel, they were aware from at least the first day of the Debtor's third bankruptcy case that Ameriquest was acting in its capacity as servicer of the Debtor's Mortgage.

For the foregoing reasons, no finding of contempt is warranted against the Buchalter Respondents. Nor are any sanctions warranted.

## STATEMENT OF FACTS[1]

In or around October 2002, the Firm was notified that Jacalyn S. Nosek (the "Debtor") had filed a third bankruptcy proceeding. At that time, the Firm was serving as national bankruptcy counsel to Ameriquest Mortgage Company ("Ameriquest"), but in accordance with the Firm's established practice of referring proceedings within bankruptcy cases outside of

---

[1] Ameriquest Mortgage Company has submitted a response to the Order to Show Cause, and as set forth therein, a detailed statement of facts, in particular with respect to the Debtor and the Debtor's counsel's knowledge of the status of Norwest as the holder. The Buchalter Respondents refer the Court to the Ameriquest response.

2

California to local counsel,[2] the Debtor's case was referred to Ablitt & Charlton, P.C. (then called Ablitt & Caruolo, PC) (the "Ablitt Firm") to represent Ameriquest's interests.

Between October 2002 and December 2004, the Firm had minimal involvement with the Debtor's third bankruptcy case, except in October 2002, the Firm prepared a Proof of Claim for execution by Ameriquest and filed and served that Proof of Claim in the Debtor's bankruptcy case on November 1, 2002. Subsequently, the Firm prepared an Amended Proof of Claim for execution by Ameriquest and filed and served that claim in the Debtor's bankruptcy case on May 5, 2003. In each Proof of Claim Ameriquest was identified incompletely, in as much as the proofs of claim did not reflect that Ameriquest was filing the claims under a pooling and servicing agreement among, Ameriquest , Norwest Bank Minnesota, N.A., as Trustee ("Norwest") and certain other parties including the AMERSCO Residential Securities Corporate Mortgage Loan Trust Series 1998-2 (the "AMERSCO Trust"). The Proofs of Claim were prepared by a paralegal in the Firm's residential mortgage bankruptcy group who is no longer with the Firm.

The Firm has not been able to determine whether at the time it prepared the two proofs of claim it had information as to the identity of the owner. However, the Firm has determined that at the time it filed the two proofs of claim it was aware that the various sale, pooling and servicing agreements granted Ameriquest the legal and contractual right to file proofs of claim on behalf of the various owners of loans. Indeed, as established in the response by Ameriquest to the Order to Show Cause (the "Ameriquest Response"), the Proofs of Claim were filed by Ameriquest pursuant to a power of attorney granted Ameriquest in the Pooling and Servicing Agreement (the "Servicing Agreement") for Norwest as trustee for the AMRESCO Trust.

---

[2] Bankruptcy proceedings that would be referred to local counsel typically include lift stay motions, responses to objections to claims, and objections to Chapter 13 plans.

3

Other than preparing and filing the Proofs of Claim, the Firm had no other involvement with the Debtor's third chapter 13 proceeding shortly before December 2, 2004, when the Debtor commenced an adversary proceeding against Ameriquest. See Jacalyn S. Nosek v. Ameriquest Mortgage Company, et al., Adv. Proc. No. 04-4517 (JBR) (the "Adversary Proceeding"). The Adversary Proceeding sought damages from Ameriquest for unlawful mortgage servicing practices. The Ablitt Firm continued to represent Ameriquest in connection with the Adversary Proceeding. The Firm provided some assistance to the Ablitt Firm, primarily coordinating communications between the Ablitt Firm and Ameriquest and facilitating Ameriquest's responses to the Debtor's discovery requests. From approximately December 2004 through June 2006, Alan Horowitz, a bankruptcy analyst in the Firm's residential mortgage bankruptcy group, was the principal contact between the Ablitt Firm and Ameriquest regarding the Adversary Proceeding. Over this eighteen-month period, Mr. Horowitz spent fewer than twenty hours with respect to the Debtor's case and the Adversary Proceeding. It was not until June 30, 2006, after this Court issued its Order and Memorandum of Decision in the Adversary Proceeding, which awarded judgment to the Debtor, that the Firm became more active in the Adversary Proceeding.

Though Mr. Garfinkle had joined the Firm in February 2003, he did not represent Ameriquest in connection with the Debtor's case, Adversary Proceeding, or any other matter involving the Debtor until July 2006. On or about July 6, 2006, Mr. Garfinkle first became aware of the Debtor's case and Adversary Proceeding, when Mr. Garfinkle was requested to review the Memorandum of Decision and to advise Ameriquest as to its appellate options and strategies going forward. Given the limited amount of time Mr. Garfinkle had to respond, due to any notice of appeal or motion for reconsideration being due in less than four days, the scope of

his review was limited to the Memorandum of Decision and related pleadings filed in the Adversary Proceeding.

Mr. Garfinkle formed his response to Ameriquest based upon a review of the issues of law considered in the Memorandum of Decision. Mr. Garfinkle had no reason to inquire into the completeness or accuracy of the description of Ameriquest's status in the Adversary Proceeding or the bankruptcy case given that the Complaint related to Ameriquest's conduct as loan servicer. For example, the Debtor had sued Ameriquest for violating certain provisions of RESPA, the Federal statute governing loan servicers. Since Ameriquest was indisputably the servicer of the loan and the conduct complained of related to Ameriquest's capacity as servicer of the loan, Mr. Garfinkle had no occasion to further examine the other pleadings in the case.

On July 10, 2006, having determined that there was a good-faith basis for an appeal from the Court's Memorandum and Order, Mr. Garfinkle revised and caused the Ablitt Firm to file a Notice of Appeal. See *Notice of Appeal, Designation of Record and Statement of Issues to be Presented on Appeal by Ameriquest Mortgage Company from Order of the United States Bankruptcy Court entered on September 19, 2006,* and *Election by Appellants to Have Appeal Heard by the United States District Court* (Docket Nos. 114 and 116) (collectively, the "Appeal Papers"). On July 19, 2006, Mr. Garfinkle signed an affidavit and motion to be admitted *pro hac vice* before this Court. Neither the Appeal Papers nor the Motion and Affidavit for Admission *pro hac vice* concerned Ameriquest's status with respect to the loan or contained any representations with respect to Ameriquest's status, since Ameriquest's status was immaterial to those pleadings. The Buchalter Respondents acted as co-counsel with the Ablitt Firm after the Court allowed the motion on July 21, 2006.

5

Following Mr. Garfinkle's consideration of the appellate issues, he assisted in the preparation of the *Opposition to Plaintiff's Motion to Assess Attorneys' Fees and Costs* (the "Opposition"), filed on July 17, 2006. (Docket No. 118.) The Opposition focused on the Debtor's alleged right to recover attorneys' fees and costs under the causes of action upon which the Debtor was awarded judgment in the Adversary Proceeding—violations of RESPA, Mass G.L. Chapter 93A and the covenant of good faith and fair dealing under Massachusetts law. Since the Opposition focused on the Debtor's recovery of attorneys' fees, the Opposition expressly adopted the facts as found by the Court in its Memorandum of Decision. Mr. Garfinkle had no reason to inquire into Ameriquest's status and did not focus on whether its status was fully and completely disclosed.

On September 19, 2006, the Court overruled Ameriquest's objection and awarded the Debtor's attorneys' fees and costs in the amount of $47,395.80 (the "Fee Order"). On September 29, 2006, Ameriquest appealed the Fee Order. In connection with the appeal, Mr. Garfinkle prepared and caused the Ablitt Firm to file a *Notice of Appeal, Designation of Record* and *Statement of Issues to be Presented on Appeal by Ameriquest Mortgage Company from Order of the United States Bankruptcy Court entered on September 19, 2006,* and an *Election by Appellants to Have Appeal Heard by the United States District Court.* (Docket Nos. 151 and 156.) On October 12, 2006, in connection with the appeal, Mr. Garfinkle prepared and filed additional pleadings relating to an attempted cross-appeal by the Debtor. On behalf of Ameriquest, Mr. Garfinkle prepared (1) *Ameriquest Mortgage Co.'s Motion to Strike Portion of Nosek's Statement of Issues on Appeal;* (2) *Ameriquest Mortgage Co.'s Request for Judicial Notice in Support of Motion to Strike Portions of Nosek's Statement of Issues on Appeal,* and (3) *Ameriquest Mortgage Co.'s Amended Motion to Strike Portion of Nosek's Statement of Issues*

*on Appeal.* (Docket Nos. 160, 161 and 163.) Neither the papers prepared by Mr. Garfinkle to initiate the appeal nor the papers prepared by Mr. Garfinkle responding to the Debtor's cross-appeal implicated Ameriquest's status, and to the extent that the pleadings contained any reference to Ameriquest as the holder, such characterization was not material to the issues raised.

On November 13, 2006, the District Court determined the appeal and remanded the case to the Bankruptcy Court. Following the remand, Mr. Garfinkle prepared and filed (1) *Ameriquest Mortgage Company's Brief Re: District Court's Memorandum and Order*, (2) *Request for Judicial Notice in Support of Ameriquest Mortgage Company's Brief Re: District Court Memorandum and* Order and (3) *Ameriquest Mortgage Company's Response to Debtor's Motion to File Supplemental Brief.* (Docket Nos. 178, 184 and 186.) Each of these briefs addressed issues of the Debtor's right to recover under Massachusetts General Laws, Chapter 93A ("Chapter 93A"), and § 105(a) of the Bankruptcy Code and each were solely addressed to the legal issues that had been remanded by the District Court. Moreover each of these briefs concerned actions taken by Ameriquest as a servicer of the loan. While with respect to such pleadings the Buchalter Respondents had an opportunity to correct the inaccurate characterization of Ameriquest as the holder, under the circumstances the characterization was not material to any of the issues that were then in dispute. Accordingly, the Buchalter Respondents focused their attention on the limited issues of whether Nosek's cause of action under Mass. G.L. Chapter 93A was preempted, whether Nosek was entitled to assert a post-appeal claim under § 105(a) of the Code and, on limited basis, why damages should not be awarded under § 105(a) of the Code.

Subsequently, on March 6, 2007, this Court entered its Order and *Memorandum of Decision on Remand from the United States District Court for the District of Massachusetts.* In

7

the Order, the Court entered judgment in favor of the Debtor, finding that Ameriquest's conduct as servicer was sanctionable under § 105(a) of the Code. Thereafter, Mr. Garfinkle timely prepared and filed an appeal from the Court's Order, including Ameriquest's *Notice of Appeal, Designation of Record and Statement of Issues to Be Presented on Appeal by Ameriquest Mortgage Company from Order of the United States Bankruptcy Court entered March 6, 2006* and an *Election by Appellants to Have Appeal Heard by the United States District Court.* (Docket Nos. 192 and 193.) Those papers did not expressly describe Ameriquest's status, and to the extent that they incorporated other pleadings that incompletely or inaccurately described Ameriquest's status as holder, that characterization was not material to the issues raised on appeal. The incorporation of other pleadings was exclusively for appellate designation purposes, as required by the Bankruptcy Rules, and the Buchalter Respondents did not intend to mislead or intentionally mischaracterize the status of Ameriquest.

In addition to the appellate matters, the Buchalter Respondents filed on behalf of Ameriquest an Objection to Confirmation of the Debtor's Chapter 13 Plan. The Objection was filed on November 21, 2006, shortly after the District Court's remand decision but before any supplemental briefs had been filed. The Objection contained a description of Ameriquest as the holder of an allowed secured claim (an accurate statement). While describing Ameriquest in its representative capacity as the servicer acting under the authority granted it by the Servicing Agreement would have more accurately described Ameriquest's status, it would not have been outcome determinative.

On or about July 27, 2007, the Debtor commenced a second adversary proceeding against Ameriquest and the two Chapter 13 trustees in this District seeking among other things, attorneys' fees, pre- and post-judgment interest and additional damages against Ameriquest.

There were no allegations of ownership of the Nosek Mortgage or any of the underlying facts in the complaint commencing the second adversary proceeding As a result, the answer filed by the Buchalter Respondents did not investigate or address any of the underlying facts, as there was no need to.

In connection with that action, the Debtor subsequently sought approval of an attachment on the two Chapter 13 trustees in this District (the "Trustee Process Motion"). With the filing of the Trustee Process Motion, Ameriquest's status was first put into issue since the Buchalter Respondents became actively involved in the litigation. The Buchalter Respondents immediately and promptly advised the Court and the Debtor of Ameriquest's custodial role as to any moneys payable by Chapter 13 trustees on account of proofs of claim previously filed by Ameriquest. The Buchalter Respondents filed an Opposition describing Ameriquest's role as servicer and assisted in the preparation of the Affidavit of Eileen Driscoll Rubens (the "Rubens Affidavit"). (Adversary Proc. No. 07-04109, Docket Nos. 20 and 21.) Those papers fully described Ameriquest's role as servicer.

In addition to the various pleadings filed by Mr. Garfinkle and the Firm, Mr. Garfinkle appeared both telephonically and in person at several hearings in the Debtor's bankruptcy case and the adversary proceedings. Specifically, Mr. Garfinkle first personally appeared in this Court at the hearing on the Debtor's motion to assess fees and costs filed in the first adversary proceeding which took place on August 30, 2006. Mr. Garfinkle also made a telephonic appearance on December 18, 2006 at a hearing on the Debtor's motion to amend her Chapter 13 plan in the bankruptcy case. As set forth above, the inquiry in each of each these instances involved solely (a) the Debtor's status as a prevailing party in the adversary proceeding and (b)

her right to amend her Chapter 13 plan, both legal issues unrelated to Ameriquest's status as servicer of the loan.

In the second adversary proceeding, Mr. Garfinkle appeared telephonically twice at hearings on September 27, 2007 and November 28, 2007 regarding, respectively, the Debtor's Trustee Process Motion and a motion to amend her complaint filed in that proceeding. At the time of these hearings, the Firm had already prepared and filed the opposition to the Trustee Process Motion and the Rubens Affidavit, fully addressing the role of Americquest as servicer of the loan for Norwest as trustee of the AMRESCO Trust.

None of the actions of the Buchalter Respondents prejudiced the Debtor or misled the Debtor's counsel given their prior knowledge as detailed in the Ameriquest Response. Repeating the most relevant fact: *In the Debtor's own Bankruptcy Schedules, she listed Norwest as Trustee as her secured creditor and listed Ameriquest and the Firm as acting on behalf of Norwest as Trustee.*

### ARGUMENT

1. **The Buchalter Respondents' Actions Do Not Warrant Sanctions under Federal Rule of Bankruptcy Procedure 9011.**

"The purpose of Rule 9011 is to deter baseless filings in bankruptcy and thus avoid the expenditure of unnecessary resources by imposing sanctions on those found to have violated it." In re M.A.S. Realty Corp., 326 B.R. 31, 37 (Bankr.D.Mass.2005), *citing* In re Deville, 280 B.R. 483, 492 (9th Cir.B.A.P.2002), In re Kilgore, 253 B.R. 179, 192 (Bankr.D.S.C. 2000). Whether a violation of Rule 9011(b) has been shown to have occurred is subject to an objective standard of whether "an inquiry reasonable under the circumstances". Id. at 38, *citing* 498 U.S. 533. The Court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably

10

necessary to deter repetition of the offending conduct. See Advisory Committee Notes to Rule 11, 1993 Amendments. An inadvertent factual error, not central to the matter before the court, should not be cause to impose sanctions upon a party. See e.g. Milwaukee Concrete Studios, Ltd. v. Field Manufacturing Co., 8 F.3d 441, 449-50. See also 11 MOORE'S FEDERAL PRACTICE §11.11[4] (discussing that more than a technical violation of Rule 11 is required in order to establish sanctions).

Ameriquest had the authority pursuant to Sections 8.01(e) and 8.13 of its Servicing Agreement to file proofs of claim under its own name based upon a power of attorney granted to it by Norwest as Trustee of the AMRESCO Trust. While the Firm should have more clearly identified Ameriquest's role as servicer to Norwest as Trustee of the AMRESCO Trust, its description of Ameriquest's status does not equate to a violation of Rule 9011 or conduct worthy of sanctions. That is particularly true here where the Debtor herself listed Norwest as Trustee as a secured creditor in her Bankruptcy Schedules and listed Ameriquest and the Firm as acting on behalf of Norwest as Trustee.

Ameriquest, at all relevant times, had a colorable claim to the Debtor's property and authorization to act in its own name pursuant to the terms and power of attorney contained in its Servicing Agreement with Norwest as Trustee of the AMRESCO Trust. Furthermore, when the Firm's description of Ameriquest's status as servicer of the loan became relevant, in September 2007, the Buchalter Respondents fully addressed Ameriquest's status in the preparation and filing of the Opposition to the Trustee Process Motion and assisting in the preparation of the Rubens Affidavit. Based upon the foregoing, sanctions are not warranted.

At no time did the Buchalter Respondents willfully or intentionally conceal or mislead the Debtor or her counsel with respect to Ameriquest's role as servicer. As set forth more fully

in the Ameriquest Response, the record establishes that the Debtor and her counsel had actual knowledge that Norwest, as Trustee of the AMRESCO Trust was the owner of the note and mortgage. There are multiple references as to Ameriquest's status in the public record including, but not limited to, recorded documents in the Massachusetts Land Court, recorded documents in the Worcester County Registry of Deeds, and the pleadings filed with this Court including those filed by the Debtor herself.

Sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011 should only be imposed for serious misconduct. See 11 MOORE'S FEDERAL PRACTICE §11.11[4]. Any ambiguities in determining whether sanctions should be imposed should be resolved in favor of the party against whom the proposed sanctions are to be assessed. See id. at §11.11[5]. To the extent a violation of the rule is found, sanctions should only be assessed in an amount "sufficient to deter repetition of such conduct or comparable conduct by other similarly situated." M.A.S. Realty Corp., 326 B.R. at 38 quoting Fed.R.Bankr.P. 9011(c)(2). In this case, there is no violation of Federal Rule of Bankruptcy Procedure 9011. Even if there is a violation, no sanction is necessary to deter its repetition.[3]

2.  **The Buchalter Respondents' Actions Do Not Warrant Sanctions under 28 U.S.C. §1927.**

The Buchalter Respondents' representation of Ameriquest did not unreasonably and vexatiously multiply these proceedings so as to warrant sanctions under 28 U.S.C. §1927. Regrettably, the preparation of the proofs of claim by the Firm did not completely reflect

---

[3] The Firm continues to act as national bankruptcy counsel for other loan servicers. In that role, the Firm regularly files proofs of claim in every district in the country. To ensure complete compliance with several recent reported bankruptcy court decisions and recently adopted local bankruptcy rules or standing orders issued by bankruptcy judges within specific districts, the Firm now lists the actual owner of the loan in each proof of claim. In some districts, as now required by local rules or standing orders, the Firm includes in proofs of claim other information about the legal and contractual right of loan servicers to file proofs of claim on behalf of the actual owners of the loans.

Ameriquest's status as servicer of a loan on behalf of Norwest. That omission was unintentional and was not intended to delay or otherwise impede the timely resolution of the Debtor's Chapter 13 case or the adversary proceedings relating thereto. As such the conduct of the Buchalter Respondents is not be sanctionable under Section 1927.

Even though Section 1927 does not, *per se*, require willful actions in order to justify sanctions, the party against whom sanctions are proposed to be assessed "more severe than mere negligence, inadvertence or incompetence." Cruz v. Savage, 896 F.2d 626, 631 (1st Cir.1990). See also Stone and Brisco Baling Corp. v. Casiello (In re Casiello), 2006 WL 566497 (Bankr.D.Mass.2006); Kiefel v. Las Vegas Hacienda, Inc., 404 F.2d 1163, 1167 (7th Cir.1968) (Section 1927 sanctions appropriate where conduct demonstrates "serious and studied disregard for the orderly process of justice"); Griffen v. City of Okla. City, 3 F.3d 336, 342 (10th Cir.1993) ("Sanctions under §1927 are appropriate 'for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties'") *quoting* Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir.1987).

After the filing of the proofs of claim, the Buchalter Respondent's role in the case was primarily with respect to appellate matters in the first adversary proceeding, commencing in July 2006. The legal and factual issues relating to those appellate matters did not, in any way, implicate or involve the ownership of the Debtor's Mortgage, but rather related to deficiencies and flaws in the claims which Nosek chose to assert against Ameriquest in its capacity as servicer, a status which has never been disputed. Immediately following the filing of the 2007 adversary proceeding and the Trustee Process Motion, the Buchalter Respondents addressed Ameriquest's custodial capacity with respect to payments made by Chapter 13 trustees on

account of proofs of claim previously filed by Ameriquest by filing its Opposition to the Trustee Process Motion and assisting in the preparation and filing of the Rubens Affidavit.

Because the actions by the Firm and Mr. Garfinkle were taken neither in contradiction of an attorney's duties nor in disregard of this Court's processes, they do not equate to the type of conduct which Section 1927 is designed to regulate and govern.

**WHEREFORE**, for all of the foregoing reasons, the Buchalter Respondents respectfully request that the Court decline to find any violations of Federal Rule Bankruptcy Procedure 9011 or 28 U.S.C. §1927 and not impose any sanctions on either of the Buchalter Respondents.

Respectfully Submitted,

BUCHALTER NEMER, PC and JEFFREY K. GARFINKLE,

By their counsel,

*/s/ Harold B. Murphy*
Harold B. Murphy (BBO No. 326610)
Natalie B. Sawyer (BBO No. 660072)
Hanify & King, P.C.
One Beacon Street
Boston, MA 02108
617-423-0400

::ODMA\PCDOCS\DOCS\491077\1